**John Henry SELVAGE,
Petitioner-Appellee-Appellant,**

v.

**James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent-Appellant-Appellee.**

No. 88–2278.

United States Court of Appeals,
Fifth Circuit.

March 28, 1988.

Jim Mattox, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for Lynaugh.

David Cunningham, Houston, Tex., for Selvage.

Before POLITZ, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this, John Henry Selvage's second habeas trip to the federal courts, the United States District Court has granted a stay of his execution scheduled to be carried out before sunrise on March 30, 1988. The State of Texas asks this court to vacate that stay of execution. Selvage, in turn, requests a stay pending appeal of his dismissed claims, should we vacate the stay granted by the district court. Despite the shortness of time we will describe the history of this case and then turn to each of Selvage's claims. We conclude that we must vacate the stay and deny Selvage's request for stay because we are persuaded that Selvage's only substantial claim has not been preserved for review.

I

Selvage was convicted of the capital murder of Albert Garza, a peace officer, while attempting to rob Stephen Ventura, a jeweler. The jury found Selvage guilty on February 8, 1980, and on February 11, answered affirmatively the requisite interrogatories submitted pursuant to Article 37.-071, Tex.Code Crim.Proc. (Vernon Supp. 1988), the Texas capital sentencing provision. The conviction and death sentence were affirmed by the Texas Court of Criminal Appeals on July 11, 1978. *Selvage v. State,* 680 S.W.2d 17 (Tex.Crim.App.1984). Selvage did not petition for a writ of certiorari.

With his execution scheduled for November 14, 1985, Selvage sought a stay of execution from the United States District Court for the Southern District of Texas. That stay was granted on November 8, 1985. After considering Selvage's amended petition, the district court denied relief and, after what we later described as a "rankle over notice of appeal," we affirmed the denial of habeas relief. *Selvage v. Lynaugh,* 823 F.2d 845 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 309, 98 L.Ed.2d 268 (1987). When the trial court rescheduled his execution for January 27, 1988, Selvage filed his second application for state habeas relief. In this state habeas petition, Selvage asserted four bases for relief:

(1) the state trial judge denied Selvage due process by refusing inquiry during the voir dire of the panel concerning veniremens' understanding of a life sentence under Texas law;

(2) the admission into evidence of "unreliable, unadjudicated crimes evidence

during the penalty phase" was contrary to the eighth and fourteenth amendments;

(3) failure of the capital sentencing procedure in Texas to allow consideration by the jury of a defendant's evidence of mitigation contrary to the eighth and fourteenth amendments; and

(4) failure of Texas capital sentencing procedure to provide a means for the jury's independent consideration of mitigating evidence.

The execution then was rescheduled for March 30, 1988, and without an evidentiary hearing, the state trial court on March 14, 1988, denied a stay with detailed findings of fact and conclusions of law. The Texas Court of Criminal Appeals adopted the trial court's findings and denied the writ. *See Ex Parte Selvage*, No. 16, 884–02, Tex. Crim.App. (March 21, 1988).

In his application for a stay of execution and writ of habeas corpus filed in the United States District Court, Selvage made the same arguments, adding that trial counsel had failed to investigate and present evidence of Selvage's mental illness, depriving Selvage of effective representation required by the sixth and fourteenth amendments. While the last contention is arguably new, the state concedes that Selvage has exhausted his state remedies. However, the state moved to dismiss for abuse of the writ, arguing that all of Selvage's present arguments could have been made in his first habeas petition.

The district court granted both Selvage's motion to proceed in forma pauperis and his application for a stay of execution. The stay rested solely on Selvage's first claim that he was denied the right to conduct voir dire regarding veniremens' understanding of Texas parole law. The district court rejected all other grounds, denied a certificate of probable cause as to them, but did not address the state's contention that Selvage had abused the writ. Selvage has filed a cross-appeal and requests that we issue a certificate of probable cause and a stay pending that appeal.

## II

■ Our standard for review of a stay is essentially the same as the measure for granting a stay. We must consider:

(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest. *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir.1984); *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir.1982), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir.1982).

In a capital case "while the movant need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e. the other three factors] weighs heavily in the favor of granting the stay." *O'Bryan v. McKaskle*, 729 F.2d at 993 (quoting *Ruiz v. Estelle*, 666 F.2d at 856.).

*Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987); *see also Streetman v. Lynaugh*, 835 F.2d 1521, 1524 (5th Cir.1988).

## III

■ The district court rested its stay of execution upon *King v. Lynaugh*, 828 F.2d 257, *reh'g en banc granted*, 828 F.2d 269 (5th Cir.1987), concluding that the panel in *King* had found a constitutional right to inquire into veniremens' understanding of parole. To the extent the district court footed its grant of a stay upon its view that the panel opinion was binding, it was in error. The grant of a rehearing en banc vacates the panel opinion, which thereafter has no force. The controlling law must be stated without giving effect to that panel opinion. As we will explain, we are not persuaded that Selvage has shown the requisite likelihood of success on this issue.

■ Before turning to the merits of the claim, we pause to explain that we find no writ abuse in the failure of Selvage to include this claim in his earlier federal habeas petition. The question is whether Selvage withheld the claim "without legal excuse." *Daniels v. Blackburn,* 763 F.2d 705, 707 (5th Cir.1985).

> Legal excuse exists if "new claims[s] [are] based on facts or legal theories about which [the petitioner] had no knowledge when prosecuting his prior habeas petition." ... "A petitioner can prove that he has not abused the writ by showing, for example, [that] new facts have arisen since his prior petition, or that the law has changed in some substantive manner in the interim."

*Id.* (citations omitted).

The legal basis for the argument that Selvage was denied a constitutional right to inquire into the veniremens' understanding of parole enjoyed virtually no support in this circuit before the panel opinion in *King v. Lynaugh,* issued approximately six years after his trial and after our decision affirming the denial of his first federal petition for habeas relief. *King,* although short lived, presented a significant change in our circuit's law. We are persuaded then that this claim should not be dismissed for abuse of the writ; or in any event, that Selvage has a likelihood of avoiding the state's charge of writ abuse. It follows that whether this claim will support a stay requires that we ask whether the accused restriction on voir dire presents a serious question under our law.

We are not persuaded that a substantial legal question is presented. In *Milton v. Procunier,* 744 F.2d 1091 (5th Cir.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985), we considered the type of information about post-sentence relief a defendant is entitled to have explained to the jury. The state trial judge in *Milton* gave a pattern instruction not to consider possible action by the Board of Pardons and Paroles or the governor or to consider how long the defendant would be required to serve. We observed that the instruction "to some degree narrows the inquiry into future dangerousness. It is the obverse of *Ramos.*" 744 F.2d at 1100 n. 10.[1] Under Texas law a jury may not consider the possibility of parole in its deliberation. We have rejected the assertion that this Texas rule is unconstitutional. *O'Bryan v. Estelle,* 714 F.2d 365, 388–89 (5th Cir.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015–16, 79 L.Ed.2d 245 (1984).

If the Texas practice of instructing juries not to consider the effect of parole is sound the refusal to explore veniremens' "understanding" of the subject is an a fortiori case. The point is that the inquiry into parole matters in the selection of a jury cannot be required so long as the state may instruct the selected jury that it cannot consider the subject at all. A contrary assertion borders on the frivolous.

The decision of the Supreme Court in *Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) is not to the contrary. In *Turner,* the Court held that a capital defendant accused of an interracial crime may on voir dire have the veniremen told the race of the victim and questioned about racial bias. The court observed that in such cases "[b]ecause of the range of discretion entrusted to a jury in a capital sentencing hearing, there is a unique opportunity for racial prejudice to operate but remain undetected." *Id.,* 106 S.Ct. at 1687. The Court plainly acted upon the reality of the significant risk of racial bias that could infect the entire proceedings. The Court also has made plain that its efforts to excise racial bias is driven by intrinsic as well as instrumental concerns about accurate decisionmaking. *Palmore v. Sidoti,* 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). Of course, Turner was entitled to a jury instruction that the race of the victim and the defendant would not be considered.

■ In sum, *Turner* is inapposite, and in the face of our controlling cases we cannot conclude that refusing to examine venire-

---

1. *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (the Briggs instruc-  tion).

men about their understanding of parole or their understanding of a life sentence, a subject they later will be told they are not to consider at all, denied Selvage any right secured by the Constitution.

## IV

Selvage next quarrels with the admission of "unadjudicated crime evidence during the penalty phase" of his trial. At the penalty phase, the court admitted the state's offer of two prior federal convictions—possession of a controlled substance and conspiracy to commit bank robbery. In addition, the state offered the testimony of a New Orleans police officer that Selvage had attempted to escape from a Louisiana state institution, injuring himself in the process. The state also produced two witnesses whose testimony at the penalty phase implicated Selvage in a July 6, 1979, robbery and murder at a convenience store. The store clerk testified that Selvage and an accomplice had demanded money from the register and ordered the clerk to a back room. After hearing gunshots, the clerk returned from the back room to find a customer who had been shot. That testimony was corroborated by a customer who had accompanied the customer who was killed.

█ Selvage contends that admission of this evidence rendered his sentence unreliable and unfair, that because he was not convicted he is presumed innocent of these crimes, and that the jury never was told that before it could consider this evidence, it had to be persuaded beyond a reasonable doubt that he was guilty of the offenses. The state points out that no objection to admission of this evidence was made at trial, and that both the state trial and appellate courts had relied upon the failure to object as a procedural bar. It follows that this claim must be tested under the procedural default doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977), and *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). That is, Selvage must show legal excuse— good cause for the default and resulting prejudice. Selvage, however, makes no

such showing, and we find in the record no justification for his failure to object. Thus, his objection is procedurally barred.

█ In any event, we are persuaded that the state's evidence was admissible at the penalty phase and denied Selvage no right due him. This evidence was admitted only in the punishment phase and thus did not risk an erroneous finding of guilt. Furthermore, at the penalty phase, the jury must consider the issue of the future dangerousness of Selvage, and this evidence was directly relevant to that inquiry. Indeed, in *Barefoot v. Estelle*, the Supreme Court rejected the argument that psychiatric testimony regarding future dangerousness was too unreliable. The Court pointed out that testimony by psychiatrists undoubtedly increased the likelihood of the death sentence, but rejecting the evidence on that basis would undermine *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed. 2d 929 (1976). *See Barefoot v. Estelle*, 463 U.S. 880, 896–98, 103 S.Ct. 3383, 3396–97, 77 L.Ed.2d 1090 (1983); *see also Williams v. Lynaugh*, 814 F.2d 205 (5th Cir.) *cert. denied*, —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *Milton v. Procunier*, 744 F.2d at 1097.

## V

█ Selvage next argues that the Texas capital sentencing procedure prevents the jury's consideration of mitigating evidence. We are not persuaded that Selvage has a likelihood of succeeding on this claim. Selvage's first difficulty is that he did not object to the court's charge at the punishment phase of the trial; he requested no instruction on mitigating evidence, and did not otherwise question the capital sentencing structure on the grounds he now urges. *Ex Parte Selvage*, No. 16, 884–02 (March 21, 1988). Of course, a federal habeas court cannot review a claimed error in the conduct of a state criminal trial when the state has refused review in reliance on its contemporaneous objection rule, absent cause and prejudice for failure to object. We find no legal cause for the absence of objection.

Approximately a month before Selvage's trial, the Texas Court of Criminal Appeals rejected a similar if not identical argument and the Supreme Court had not acted on the petition for certiorari in that case. *Quinones v. State,* 592 S.W.2d 933 (Tex. Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). It follows that the issue is not a recently found legal theory not knowable by competent trial counsel. *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (so novel that its legal basis is not reasonably available). Nor is its rejection by the Texas Court of Criminal Appeals a legal excuse for not objecting. "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Engle v. Isaac,* 456 U.S. 107, 131, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982). It is true that the Texas statute had been upheld in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *see also Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In *Jurek,* five years before Selvage's trial, the Court observed that "[i]t is as yet undetermined whether or not the jury's consideration of those questions would properly include consideration of mitigating circumstances.... We cannot ... construe the statute; that power is reserved to the Texas courts." *Jurek,* 428 U.S. at 272 n. 7, 96 S.Ct. at 2956 n. 7. We cannot read these cases to so foreclose Selvage's argument that his counsel should not have preserved the point. Finally, it is no answer that "counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it...." *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

Second, even if Selvage could elude the procedural hurdle, we must ask whether he has presented a serious legal question. Selvage relies upon the granting of certiorari in *Franklin v. Lynaugh,* —— U.S.

——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987), as well as our recent discussion of the issue in *Penry v. Lynaugh,* 832 F.2d 915 (5th Cir.1987). The Supreme Court granted certiorari in *Franklin* to consider "[w]hether the jury must be instructed on the effect of mitigating evidence under the Texas capital punishment scheme." In *Williams v. Lynaugh,* 837 F.2d 1294, 1295–96 (5th Cir. 1988), we refused to stay an execution pending decision by the Supreme Court in *Franklin v. Lynaugh,* 823 F.2d 98 (5th Cir.), *cert. granted,* —— U.S. ——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987), and the Supreme Court in turn granted the requested stay on February 10, 1988. *See Williams v. Lynaugh,* —— U.S. ——, 108 S.Ct. 1000, 98 L.Ed.2d 967 (1988).

It is argued that the stay by the Supreme Court in *Williams* explicitly rejected our conclusion in *Williams* that the *Franklin* issue did not present a "substantial case on the merits involving a serious legal question." *Williams v. Lynaugh,* 837 F.2d 1294, 1298 (5th Cir.1988). Pointing to *Barefoot v. Estelle,* 463 U.S. 880, 895, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090 (1983), the argument continues that this follows because the Supreme Court will not grant a stay of execution unless there is, inter alia, "a significant possibility of reversal of the lower court's decision...."

▆ The argument has considerable force, but we have not concluded that a grant of certiorari necessarily warrants a stay. We have adhered to the rule that panels will decide death penalty cases by application of controlling circuit precedent;[2] that precedent is that the Texas statute is constitutional. *Penry v. Lynaugh,* 832 F.2d at 926; *see also Streetman v. Lynaugh,* 835 F.2d 1519 (5th Cir.) *stay denied,* —— U.S. ——, 108 S.Ct. 588, 98 L.Ed.2d 634 (1988); *cf. Johnson v. McCotter,* 804 F.2d 300 (5th Cir.1986).

We would find it even more difficult rationally to order outcomes if we were required to guess the meaning of unex-

---

2. "In the absence of declaration by the Supreme Court that executions should be stayed in cases presenting the issue raised by Wicker, we must follow our circuit's precedents and deny both a certificate of probable cause and a stay of execution on this issue." *Wicker v. McCotter,* 798 F.2d 155, 157–58 (5th Cir.1986).

plained grants of a stay or writs of certiorari. Rather, we apply the settled law of our circuit until it is changed by our court or the Supreme Court has plainly signaled a change. A brief review of the cases in which the Supreme Court has granted requests for stays and petitions for writs of certiorari explain our sense that abiding our settled view of the law until told to do otherwise best strikes for rational and evenhanded justice. We agree that the grant of stay in *Williams* suggests that the Supreme Court may disagree with this court's assessment of the *Franklin* issue. But this is not the kind of plain disagreement with our law that ought to gird our grant of a stay in the teeth of our own decisions.

Yet, there is an additional circumstance that weighs in favor of Selvage. We ourselves have questioned our treatment of the *Franklin* issue. *Penry v. Lynaugh*, 832 F.2d 915 (1987). The grant of certiorari in *Franklin* effectively halted any reconsideration of the issue by our en banc court. In these circumstances the execution of a death sentenced prisoner with a properly preserved and potentially valid *Franklin* claim should be stayed. Our rejection of a stay on this claim then rests only upon Selvage's failure to object to the instruction at the punishment phase or to request additional instruction.

### VI

Finally, Selvage contends that he suffered from ineffective assistance of counsel. As we understand Selvage's argument, it is that the state's process at the penalty phase denies his counsel the opportunity to provide effective counsel. This claim must fail for the reasons that the premise upon which it rests has been rejected.

Insofar as Selvage attempts to rely upon ineffective assistance of counsel as measured by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), he must affirmatively demonstrate prejudice. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Selvage's counsel, John Crow, filed an affidavit. Crow asserts that he decided not to investigate Selvage's mental background, the asserted failure, because as he saw it, the state's rebuttal evidence would turn Selvage's mitigating evidence against him on the question of future dangerousness. We are left with a claim of ineffectiveness that is no more than a variation of the *Franklin* claim.

### VII

Our decision to vacate this stay then rests only upon Selvage's failure to object and the state court's reliance upon Texas' contemporaneous objection rule. We are presented with no claim of factual innocence and under *Engle v. Isaac*, we find no legal excuse. We therefore vacate the stay of execution granted by the district court and deny Selvage's request for stay pending his appeal of the claims dismissed by the district court and for a certificate of probable cause pending appeal.