**Raymond LANDRY,
Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent–Appellee.**

**No. 88–2076.**

United States Court of Appeals,
Fifth Circuit.

March 29, 1988.

Michael B. Charlton, Houston, Tex. (court-appointed), for petitioner-appellant.

Margaret Portman Griffey, Asst. Atty. Gen. Austin, Tex., for respondent-appellee.

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

On the night of August 6, 1982, Raymond Landry confronted the Prittis family in the parking lot outside a Dairy Maid store run by the family. Pointing a gun at Kosmas Prittis, the husband and father, Landry ordered the family to turn over their money, including the money left in the store. In the course of the robbery, Landry shot Prittis in the head and killed him. The State of Texas convicted Landry of capital murder and sentenced him to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence on direct appeal.[1] After pursuing post-conviction remedies in the Texas courts, Landry unsuccessfully applied to federal district court for a writ of habeas corpus and a stay of execution. We grant Landry's application for a certificate of probable cause, but, finding his claims either without merit or barred by the law of this circuit, we affirm the district court's decision and deny relief.

Landry raises fourteen claims in his habeas petition. Five of these relate to the State's use of allegedly improper hypotheticals during the extended voir dire at his trial. The State concedes that, in an attempt to illustrate to veniremembers the meaning of the term "deliberately" under the Texas capital sentencing statute,[2] it posed hypothetical situations some of which did not constitute capital murder. For example, the prosecutor asked a veniremember to consider a hypothetical case in which a defendant shoots someone in the foot who then declines to seek medi-

cal attention and so dies of gangrene. Landry complains that the use of this hypothetical and others like it led the jurors to believe that the only situations in which they might decide that a defendant acted without the deliberateness requisite for imposition of a death sentence were situations not involving capital murder at all. Landry argues further that the hypotheticals hopelessly confused the venire about the distinction between a finding of "intentional" homicide at the guilt phase of his capital trial and a finding of "deliberate" conduct at the sentencing phase. Landry asserts that the use of the improper hypotheticals resulted in a denial of his Eighth and Fourteenth Amendment rights by distracting the jury from the mandatory consideration of his individual record, character, and the particular facts of his case; by improperly expanding the class of persons eligible for the death penalty; by suggesting that proof of the elements of the crime of capital murder led inexorably to a finding of deliberateness at sentencing; and by lowering the State's burden of proof.

The State points out that the defense never objected to the use of the hypotheticals, challenged a juror for cause on this basis, or even exhausted its peremptory challenges. The Texas Court of Criminal Appeals held Landry's challenges to the hypotheticals procedurally barred. On a federal habeas petition, we may not reach claims the State courts have held procedurally barred unless the petitioner offers good cause for his failure to comply with State procedure and demonstrates prejudice resulting from his default.[3]

Landry explains his counsel's failure to object by asserting that, at the time of his trial in 1983, the legal standards establishing that the voir dire was improper had not yet developed. Under the Supreme Court's decision in *Reed v. Ross*,[4] a habeas petitioner may demonstrate good cause on the

1. *Landry v. Texas*, 706 S.W.2d 105 (Tex.Crim. App.1985).

2. Tex.Code Crim.Proc.Ann. art. 37.071(b)(1) (Vernon 1981).

3. *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2665–66, 91 L.Ed.2d 434 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977).

4. 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

basis of the novelty of a constitutional claim at the time of the State proceeding in which the default occurred. If the defense counsel had "no reasonable basis upon which to formulate a constitutional question," the default is excusable.[5] In *Reed*, the Court's finding of novelty rested on a determination that federal constitutional law had changed. The Court identified three kinds of "clear break[s] with the past" that might justify a finding of novelty: the overruling of a precedent, the overturning of a longstanding practice never before ruled upon by the Supreme Court but generally accepted by the lower courts, and the disapproval of a practice sanctioned by the Court in prior cases.[6]

Landry asserts no comparable change in federal constitutional law. Indeed, he relies upon constitutional standards—requiring death-sentencing juries to exercise narrow and informed discretion and to give individualized consideration to the defendant and requiring the state to narrow the class of persons eligible for the death penalty—that were already in place at the time of his trial.[7] The novelty of Landry's claim lies, instead, in the proposed application of existing standards to condemn certain voir dire questioning never before considered by this court, but recently disapproved by the Texas Court of Criminal Appeals.[8] We do not consider Landry's claim sufficiently novel to justify the procedural default. The defense counsel heard the prosecutor ask the veniremembers arguably misleading questions. Constitutional standards existing at the time provided a "reasonable basis" upon which to formulate an objection, and yet there was no objection. Landry has not, therefore, shown adequate cause for the default.

■ Landry attempts to save his claims by asserting that his attorney's failure to object to the improper voir dire constituted ineffective assistance of counsel. To make out a claim of ineffective assistance, Landry must show that his counsel fell below a standard of reasonable competence and that, but for the error, the result of the proceeding would probably have been different.[9] Even if we held the defense counsel's failure to object so serious an error as to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," [10] we could not grant relief because Landry has failed to show prejudice. He has not shown that, if counsel had objected and prevented the prosecution from possibly confusing the venire about the meaning of the term "deliberate," the jury would probably have reached a different determination either as to his guilt or as to his punishment. We remain unconvinced that the jury would probably *not* have found "deliberate" Landry's conduct in shooting his victim in the head in the course of a robbery, understanding "deliberate" to mean something more than "intentional." [11]

■ Landry asserts also that his trial counsel was ineffective in failing to object to the admission of a bank bag and pistol holster. The State found these items during an allegedly illegal search of Landry's wife's home and offered them at trial as implements of the crime. We find no incompetence in the defense counsel's failure to object to their admission because the record reveals that the search was legal. Landry's wife signed a form consenting to the search, and a state court hearing on the consent, subsequent to trial, produced no evidence that the police coerced or tricked her into signing the form.

5. *Id.* at 14–15, 104 S.Ct. at 2909.

6. *Id.* at 17, 104 S.Ct. at 2911.

7. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 188–89, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 257–58, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976); *Woodson v. North Carolina,* 428 U.S. 280, 303–04, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

8. *Lane v. Texas,* 743 S.W.2d 617, (Tex.Crim. App.1987) (en banc); *Gardner v. Texas,* 730 S.W.2d 675 (Tex.Crim.App.1987) (en banc).

9. *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984).

10. *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065.

11. *See Heckert v. Texas,* 612 S.W.2d 549 (Tex. Crim.App.1981).

■ Landry claims that the evidence was insufficient to support the jury's findings at sentencing that the murder was deliberate and that Landry would pose a continuing threat to society.[12] Under *Jackson v. Virginia,*[13] we must ask whether, viewing the evidence in the light most favorable to the jury's findings, any rational trier of fact could have found these facts beyond a reasonable doubt. The prosecution presented evidence at the guilt and sentencing phases of trial showing that Landry robbed the Prittises, shot Kosmas Prittis in the head, struck his wife Kelly in the face with his gun, and pointed the gun at the children. The State also presented evidence of a former felony conviction for burglary and of Landry's history of violent acts against his family. Based on this and other evidence, a rational jury could have found that Landry committed his crimes deliberately and that he would continue to endanger others.

Landry charges that the trial court's failure to define the term "deliberate" compounded the confusion caused by the improper voir dire and left the jury without constitutionally sufficient guidance. Defense counsel, however, failed to request an instruction on the meaning of deliberateness and lodged no objection on this ground to the charge delivered at the punishment stage. Landry offers no explanation for the default.

■ Landry challenges as violative of due process the admission at the sentencing phase of evidence of a prior felony conviction for which he was sentenced without representation by counsel. We note first that the evidence shows that Landry lacked representation at sentencing on his 1975 burglary conviction because he failed to appear, having fled the court's jurisdiction. Moreover, his lack of representation at sentencing in no way undermines the constitutionality of his conviction on the prior felony, and it was the conviction, not the sentence, that the jury considered at the punishment phase of his capital trial. We discern no due process violation in the jury's consideration at sentencing of the defendant's prior valid conviction.

■ Landry makes a more serious due process challenge to the admission at sentencing of evidence of prior unadjudicated offenses, including wife and child abuse, without formal notice from the State of its intention to offer such evidence. Although the admission of evidence of crimes for which Landry was never charged, much less convicted, may present due process problems, and although the admission of such evidence in capital cases when the State of Texas excludes it in non-capital cases may raise equal protection problems,[14] we are bound by prior decisions of this circuit holding such evidence admissible at the sentencing phase of capital trials.[15] We find no authority for requiring the state to notify the defendant before offering this admissible evidence, and Landry has not shown how the lack of notice prejudiced his defense.

■ Landry next argues that the Texas death penalty statute is unconstitutional because it fails adequately to narrow the class of persons eligible for the penalty and because it permits proof of the elements of the crime to serve also as proof of the aggravating factors warranting a death sentence. The Supreme Court's recent decision in *Lowenfield v. Phelps*[16] upholds the Louisiana death penalty statute and, by express analogy, the Texas statute against challenges identical to Landry's.

---

**12.** Tex.Code Crim.Proc.Ann. art. 37.071(b)(1) and (2) (Vernon 1981).

**13.** 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

**14.** *See Williams v. Lynaugh,* — U.S. —, 108 S.Ct. 311, 312–14, 98 L.Ed.2d 270 (1987) (Marshall, J., and Brennan, J., dissenting from the denial of certiorari).

**15.** *Williams v. Lynaugh,* 814 F.2d 205, 207–08 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *Milton v. Procunier,* 744 F.2d 1091, 1097 (5th Cir.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

**16.** — U.S. —, 108 S.Ct. 546, 552–55, 98 L.Ed. 2d 568 (1988).

 Landry asserts that the Texas death penalty scheme does not permit the jury to give full consideration to mitigating circumstances. The Texas Court of Criminal Appeals held this claim procedurally barred because Landry failed to object to the death penalty statute on this ground at trial or to request a jury charge on mitigating evidence. Landry urges that the novelty of the jurisprudence on mitigating circumstances excuses his defaults. In our recent decision in *Selvage v. Lynaugh,*[17] however, this court held that the petitioner could not establish cause for a procedural default on the ground that the law on mitigating circumstances was new. In 1980 the Texas courts faced and rejected the contention that the death penalty scheme prevented adequate consideration of mitigating circumstances.[18] The state court's prior rejection of the claim does not constitute cause for the default.[19] Moreover, as far back as 1976, in *Jurek v. Texas,*[20] the Supreme Court intimated that whether the Texas courts would construe the statute so as to allow full consideration of mitigating circumstances remained an open question. At his trial in 1982, therefore, Landry had a reasonable basis upon which to formulate an objection.[21] His argument to this court is barred because of his failure to do so.[22]

The court in *Selvage* went on to state that, in the absence of a procedural bar, it would have granted a stay on the basis of the petitioner's claim that the death penalty scheme unconstitutionally restricted the jury's consideration of mitigating factors.[23] As this issue is not now before the court, we express no opinion about it.

For these reasons, we DENY habeas corpus and VACATE the stay of execution granted by this court on January 27, 1988.

W. EUGENE DAVIS, Circuit Judge, concurring:

I concur in the judgment of the court. I also concur in all of Judge Rubin's careful opinion except the single sentence that expresses reservations about the correctness of our holding in *Williams v. Lynaugh,* 814 F.2d 205 (5th Cir.1987). For reasons stated in that opinion, I do not share the concern of my colleagues that the State of Texas may not constitutionally permit the State to admit evidence of prior unadjudicated offenses of the accused in the penalty phase of a capital case.

17. 842 F.2d 89, at 93–94 (5th Cir.1988).

18. *Id.* (citing *Quinones v. Texas,* 592 S.W.2d 933 (Tex.Crim.App.1980)).

19. *Id.* (citing *Engle v. Isaac,* 456 U.S. 107, 131, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982)). *See also Smith,* 477 U.S. at 533, 106 S.Ct. at 2666 (1986).

20. 428 U.S. 262, 272–73, 96 S.Ct. 2950, 2956–57, 49 L.Ed.2d 929 (1976).

21. *Reed,* 468 U.S. at 14–15, 104 S.Ct. at 2909.

22. *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2507.

23. *Selvage,* 842 F.2d 89, at 94–95. *See also Franklin v. Lynaugh,* 823 F.2d 98 (5th Cir.1987), *cert. granted,* — U.S. —, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987); *Williams v. Lynaugh,* 837 F.2d 1294, 1295–98 (5th Cir.1988), *stay granted,* — U.S. —, 108 S.Ct. 1000, 98 L.Ed.2d 967 (1988). *But see Penry v. Lynaugh,* 832 F.2d 915, 126 (5th Cir.1987); *Streetman v. Lynaugh,* 835 F.2d 1519, 1520 (5th Cir.1988).