**Leon Rutherford KING,
Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent–Appellee.**

No. 89–2276.

United States Court of Appeals,
Fifth Circuit.

March 21, 1989.

Robert L. McGlasson, Eden E. Harrington, Austin, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Bob Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

PER CURIAM:

Less than one week before his scheduled execution date of March 22, 1989, petitioner Leon Rutherford King has commenced his second petition to secure a writ of habeas corpus in the state and federal courts. The federal district court denied relief. The district court also refused to issue a certificate of probable cause to appeal, which may only be granted if a petitioner makes a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed. 2d 1090 (1983). Finding six of King's claims to be procedurally barred and six more to lack merit, we deny the motions for stay of execution and certificate of probable cause.

---

## FACTS AND PROCEDURAL BACKGROUND

On October 16, 1978, a jury convicted Leon Rutherford King of the capital murder of Michael Clayton Underwood and sentenced him to be executed.[1] On February 6, 1980, the Texas Court of Criminal Appeals overturned that conviction, *King v. State*, 594 S.W.2d 425 (Tex.Crim.App.1980) (en banc), and ordered a retrial. In May 1980, a second jury convicted King of capital murder and sentenced him to death. That conviction and sentence was affirmed by the Texas Court of Criminal Appeals, *King v. State*, 631 S.W.2d 486 (Tex.Crim. App.1982) (en banc), and King's petition for certiorari was denied, *King v. Texas*, 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

King then filed his first petition for writ of habeas corpus. It was rejected by the state courts. On August 7, 1985, the district court denied the petition, but granted a certificate of probable cause to appeal in this court. A panel of this court ordered that King be granted another sentencing proceeding. *King v. Lynaugh*, 828 F.2d 257 (5th Cir.1987). The full court, sitting en banc, vacated that order and reinstated King's sentence. *King v. Lynaugh*, 850 F.2d 1055, (5th Cir.1988) (en banc), *cert. denied*, — U.S. —, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

On January 24, 1989, the State set King's execution for the early morning of March 22, 1989. King initiated his second habeas petition in state court less than one week prior to this date. The state habeas court, which was also the original trial court, made findings to support its conclusion that King received reasonably effective assistance of counsel in the investigation and preparation of his trial and at the punishment phase of his trial. The state habeas court denied relief on all other claims for reason of procedural default. On March 20, 1989, the Texas Court of Criminal Ap-

---

1. The grisly facts surrounding King's crime are recounted by the Texas Court of Criminal Appeals in *King v. State*, 631 S.W.2d 486, 488–91 (Tex.Crim.App.1982), and in our en banc opin-

ion on King's first habeas petition. *King v. Lynaugh*, 850 F.2d 1055, 1056–57 (5th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

peals denied relief based on the findings and conclusions of the state habeas court.

King filed this petition in federal court less than two days prior to his scheduled execution date. His petition raises twelve grounds for relief. In a thorough opinion, the district court addressed and denied each ground of relief, relying on procedural default, abuse of the writ, and denial on the merits. *King v. Lynaugh,* Mem.Op. (S.D.Tex. March 20, 1989). For essentially the same reasons, we affirm the denial of relief for the petitioner.

## I. PROCEDURAL DEFAULT

The following grounds for relief are raised for the first time in King's second petition for a writ of habeas corpus:

(1) that the trial court did not include certain "mitigation instructions" (Ground for Relief IV);

(2) that the trial court failed to adequately inform the jury concerning the consequences of their answers to the special issues (Ground for Relief V);

(3) that the trial court did not define certain dispositive terms in the Texas capital sentencing statute (Ground for Relief VI);

(4) that the Texas sentencing procedure of Article 37.071 is unconstitutional on its face (Ground for Relief VII);

(5) that the trial court should have instructed the jury on lesser included offenses and that the evidence was insufficient to prove capital murder (Ground for Relief XI); and

(6) that the trial court should have issued a different instruction concerning intentional conduct (Ground for Relief XII).

These issues were not preserved in the record because of King's failure to object or to offer an alternative instruction.

After finding that these six issues were not preserved, the state habeas court "clearly and expressly" stated that King was "procedurally barred from advancing

[these six] claim[s]." *See Harris v. Reed,* — U.S. ——, 109 S.Ct. 1038, 1039–40, 103 L.Ed.2d 308 (1989) (requiring a clear statement that relief is denied for reasons of procedural default). Moreover, the state habeas court did not advance any other grounds for denying relief on these six claims.[2] In its memorandum order, the Texas Court of Criminal Appeals held that:

The [habeas] court has entered findings of fact and conclusions of law and recommended the relief sought be denied. This Court has reviewed the record with respect to the allegations now made by [petitioner] and finds that the findings and conclusions entered by the [habeas] court are supported by the record. The relief sought is denied.

■ Thus, under *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), we are barred from considering these issues on federal habeas review unless King can show "good cause" for his noncompliance with state procedures and actual "prejudice" resulting from the alleged constitutional violation. Without reaching the issue of prejudice, we find that King has failed to make the required showing of "good cause" for his noncompliance with state procedures.

Treating each issue separately, we note that no attempt is made to explain why counsel did not object to the sufficiency of the evidence or ask for an instruction on lesser included offenses. Nor does counsel attempt to explain why trial counsel did not request a different instruction on intentional conduct or a definition of statutory terms used in the special jury issues. These grounds for relief are certainly not novel or unknowable to competent counsel. During voir dire and closing argument, the jury was instructed on what would be the consequences of "yes" and "no" answers to the special issues, yet no attempt is made to explain why trial counsel did not object to the jury charge that did not, yet again, explain these consequences. More-

---

**2.** Contrary to contentions made by counsel for King in telephonic oral argument, we are convinced that the state habeas court's reliance on procedural default was unambiguous. Conse- quently, we need not consider the recent holding of *Harris v. Reed* further. *See also Id.* —— U.S. at —— n. 10, 109 S.Ct. at 1040 n. 10.

over, there has been no change in law that would make these claims any more or less meritorious.[3]

The same is true for the remaining ground for relief asserted above. In *Selvage v. Lynaugh*, 842 F.2d 89, 93–94 (5th Cir.1988), we held that the *Franklin* issue of whether the Texas capital sentencing procedure prevents jury consideration of mitigating evidence was procedurally barred since "the issue is not a recently found legal theory not knowable by competent trial counsel." *See also, Bridge v. Lynaugh*, 863 F.2d 370 (5th Cir.1989) (denial of the writ based "on the absence of legal cause for Bridge's failure to raise the '*Franklin*' issue at trial"); *Quinones v. Texas*, 592 S.W.2d 933 (Tex.Crim.App. 1980) (en banc), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980) (certiorari pending during petitioner's second trial). The Supreme Court's grant of certiorari in *Penry v. Lynaugh*, —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988) and *Franklin v. Lynaugh*, —— U.S. ——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1988) does not alter the fact that such claims have been well known to trial counsel, especially since counsel preserved Penry's and Franklin's claims in 1980 and 1982 respectively. We are thus bound by our controlling precedents in *Selvage* and *Bridge* until this court, en banc, holds otherwise. For this reason, we are barred from considering the merits of these grounds and deny the relief requested.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's Sixth Amendment claims arise from the events of his capital sentencing trial. At both his 1978 and 1980 trials, King was represented by attorneys Ken McLean and Wesley Hocker. After the jury returned a verdict against him on the guilt phase of his 1980 trial, King informed his attorneys that he did not want them to offer any evidence against the imposition of the death penalty and expressed his desire to take the stand and seek death. According to the findings of the federal district court, the trial court held an informal hearing outside the presence of the jury, where King's counsel warned him that "this tactic is ill advised...." *King v. Lynaugh*, Mem.Op. at 3 (S.D.Tex. March 20, 1989). Although the trial judge explained to counsel, on the record, that King's decision to testify "is a matter of his own decision," (T-2799–2800) "he required that [ ] counsel continue to represent King and cross-examine the state's witnesses." *King v. Lynaugh*, Mem.Op. at 3; T-2799–2800.

Thereafter, King took the stand and testified as follows:

> You all found me guilty of one of the most brutal murders that have ever been in Houston. If I had found a man guilty of that kind of murder I figure he deserves the death penalty and that's what I am asking you is that the jury give me the death penalty. That's what I want.

Title 28 U.S.C. § 2254(d) requires federal courts to grant a presumption of correctness to a state court's explicit and implicit findings of fact. The state habeas court found that: defense counsel secured the services of an investigator and that "[c]ounsel spoke with every possible witness, fact or character, disclosed by [King] in an effort to find witnesses to testify at [his] trial;" that on the basis of their observations and inquiry, trial counsel had no reason to suspect King had a "drug problem" or needed to be evaluated for sanity or competency, or was "intoxicated or incompetent in any way to proceed or decide whether to testify." The court also found

---

3. We agree with the district court that King's reliance on *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is misplaced. Unlike *Caldwell*, there were never any representations to the jurors that would lessen their sense of responsibility for the imposition of the death penalty. Indeed, the opposite representations were made by counsel for both sides in closing argument. *King v. Lynaugh*, Mem.Op. at 6–7. Likewise, we find *Mills v. Maryland*, —— U.S. ——, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) to be inapposite regarding the issue of constitutionally required definitions of statutory terms. In *Mills*, the Court addressed the issue of whether ambiguous instructions might preclude jurors from considering evidence mitigating against the imposition of the death penalty.

that "[a]t no time during the trial did [King] discharge his attorneys." Finally, the court found that "[a]lthough [petitioner's] testimony forced counsel to modify their defense strategy and argument, counsel remained zealous advocates for [King] by cross-examining punishment witnesses, lodging appropriate objections, and making final arguments."

The federal district court made further findings consistent with those of the state habeas court. The district court stated:

> [A]nyone who reviews the trial record and King's 1981 Court of Criminal Appeals brief will conclude, as I do, that King's trial counsel did an outstanding job with a devastating set of facts, after the same counsel had already obtained a reversal of the first conviction. Neither losing a case with strong evidence of guilt and a defense premised on "Leroy," the mysterious alibi culprit, nor suffering a death sentence under these gruesome facts ... is an indication of ineffective assistance of counsel.

Mem.Op. at 10. We note that these findings of the state habeas and federal district courts are further supported by the affidavit of Wesley Hocker, the supplemental affidavit of Ken McLean, and evidence in the record.

King advances several contradictory claims grounded in the Sixth Amendment right to effective assistance of counsel. Some of these grounds for relief are raised for the first time in this second habeas petition, and only one of these grounds was raised in King's first petition for habeas corpus filed in the federal courts. King raises the following Sixth Amendment claims:

(1) that he was denied effective assistance of counsel at the sentencing phase of his trial because his attorneys ceased to represent him in any meaningful way (Ground for Relief I);

(2) that he was allowed to proceed *pro se* without a knowing and intelligent waiver of his right to counsel (Ground for Relief II);

(3) that he was "effectively" denied a capital sentencing trial when he was allowed to proceed *pro se* (Ground for Relief III); and

(4) that he was denied effective assistance of counsel because his attorneys failed to present any mitigating evidence or conduct an adequate or reasonable defense (Ground for Relief IX);

We review these claims based on the familiar two prong test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> First ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In our review, we are mindful that "judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689 and 104 S.Ct. at 2065, and that we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689 and 104 S.Ct. at 2066.

We reject the second (II) and the third (III) Ground for Relief because King never did proceed *pro se*. At all times during the sentencing phase of this trial, he was represented by his attorneys McLean and Hocker.[4] In short, we conclude that the findings of the state and federal trial court on this point are well supported in the record.

We reject the first (I) and eleventh (XI) Ground for Relief because we find

---

4. This finding effectively precludes King's contention that the trial court had a duty to warn him about the duties of self representation.

*Compare Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

support for the trial court's finding that McLean and Hocker "remained zealous advocates for [King] by cross-examining punishment witnesses, lodging appropriate objections, and making final argument." At King's second trial, McLean and Hocker were in a unique position to determine their trial strategy. As Wesley Hocker stated in his affidavit, "Having already tried Leon's case once, we felt that we had a good feel for Leon's case and where our strong points were.... I felt that Leon had made a good witness for himself at the first trial, especially since the jury took a considerate amount of time to return a verdict of guilty." Thus, it was not unreasonable to rely on King as his own best witness at the sentencing phase of trial.

With regard to King's "alleged" drug problem, the state habeas court found that "[i]f counsel had known of the existence of a drug problem, their trial strategy would have been to forego its presentation as evidence since jurors are generally unsympathetic toward drug abusers, particularly those who commit violent crime" (citing affidavit of W. Hocker and supplemental affidavit of K. McLean). The state habeas court concluded that, as a matter of law, defense counsel provided King with reasonably effective assistance of counsel in the investigation and preparation of his trial, in efforts to secure defense punishment witnesses, and at the punishment phase at trial.

Almost nine years after trial, petitioner suggests for the first time that additional evidence of his "alleged" drug problem should have been presented and that other witnesses should have been called to testify about his disadvantaged childhood, and in short, that things should have been done a little differently. But second-guessing is not the test for ineffective assistance of counsel. In *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, the Supreme Court explained that:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the

defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

The federal district court found that "what King now alleges as deficiencies in his counsel's conduct were in fact the result of thoughtful, tactical decisions by King's trial counsel and King's own informed decision to testify at the sentencing phase contrary to his counsels' advice." Mem.Op. at 9–10. At the very least, counsel for King conducted their defense "within the wide range of professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2066.

## III. OTHER CLAIMS

■ King argues in his seventh (VII) and eighth (VIII) Grounds for Relief that the Texas sentencing statute unconstitutionally failed to afford him the opportunity to introduce mitigating evidence of drug dependency and a disadvantaged childhood. This line of argument suffers from several defects. First, it is procedurally barred, because King never challenged the constitutionality of the Texas capital sentencing scheme at trial or on direct appeal. *See Selvage*, 842 F.2d at 93–94. Second, King has made no showing that his trial counsel felt constrained by the Texas statute from performing an adequate investigation of potential mitigating facts or that they were inhibited in any way from presenting such evidence at trial. On the contrary, as the state habeas court found, King's counsel decided that the best mitigating evidence must come from King himself and that drug dependency, if it existed, would not be viewed by the jury as mitigating against the imposition of a capital sentence. King's argument in this respect is adroitly redundant of his ineffectiveness claims.

■ Third, standing on its own, King's argument fails to meet the crucial test for constitutionally mitigating evidence. He has neither demonstrated a likelihood that he was so dependent on drugs or so disadvantaged in early youth that his rational capacities were permanently injured, nor has he shown that either of these condi-

tions affected his culpability for this particular crime. The state habeas court specifically found that Dr. Fisher's proffered affidavit lacked credibility because its conclusions concerning drug use and lack of rational capacity were extremely speculative and unsupported by objective evidence in the record. Absent Dr. Fisher's affidavit, the record in no way suggests that King's remorselessly brutal crime spree was caused by any one or more episodes of drug abuse or by an emotional injury dating from childhood. Thus, King cannot establish that his personal culpability might have been diminished by such circumstances. *Compare California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring). Such proof, however, would be the key to demonstrating the shortcoming of the Texas sentencing scheme as applied in this case.

■ The last point we must consider is King's tenth (X) Ground for Relief. King asserts that the state habeas court should have inquired into his competency when at the sentencing phase, he desired to request the death penalty and forego a defense. The only evidence offered by King for this claim is Dr. Fisher's affidavit, which the state habeas court found unworthy of belief. It should also be noted that the state trial judge personally recalled King's demeanor at that time and found no reason to question his sobriety or competency at that time. Likewise, King's trial counsel, although they disagreed with his decision to seek the death penalty, found no reason to question his mental capacity. The record is equally bereft of evidence of intoxication. Thus, we reject this claim as unsupported by the record. *See Streetman v. Lynaugh,* 835 F.2d 1521, 1527 (5th Cir.1988) (trial court's finding on competency to forego further legal proceedings is a factual

determination that is reviewed under the "clearly erroneous" standard).

Both parties have asserted additional claims which we need not address in light of the foregoing discussion.[5]

For the foregoing reasons, the motion for stay of execution and the motion for certificate of probable cause to appeal are DENIED.[6]

MOTION FOR STAY OF EXECUTION DENIED

MOTION FOR CERTIFICATE OF PROBABLE CAUSE DENIED.

ALVIN B. RUBIN, Circuit Judge, concurring:

With the reservations expressed below, I concur in Parts I and II of the opinion, and in the result reached in Part III.

Resolution of the *Franklin–Penry–Hitchcock* issues turns on whether these issues may now be considered when they were not raised at trial; if they may not now be considered, whether trial counsel was ineffective in not raising them; and if the issues may now be considered, whether the Texas capital sentencing procedure is constitutional.

The State argues, and the State habeas court found, that King's failure to raise these issues at trial constituted a procedural default under Texas law that precludes him from raising them in this post-conviction proceeding.[1]

The law of our circuit is that "a federal habeas court cannot review a claimed error in the conduct of a state criminal trial when the state has refused review in reliance on its contemporaneous objection rule, absent cause and prejudice for failure to object."[2]

Unfortunately, the decisions of this circuit on the cause-and-prejudice issue have not been clear and consistent. In *Williams*

---

**5.** The state notes, but does not vigorously pursue the contention that petitioner's eleventh hour filing, which raises a host of issues never previously advanced by this petitioner, constitutes an abuse of the writ of habeas corpus. We do not condone these tactics, but we may in this case as easily resolve the issues on the merits against King.

**6.** King's motion for Leave to Proceed In Forma Pauperis is GRANTED.

**1.** *Compare Harris v. Reed,* —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

**2.** *Selvage v. Lynaugh,* 842 F.2d 89, 93 (5th Cir. 1988).

*v. Lynaugh*,[3] this court found the procedural barrier not to preclude its consideration of Williams' *Franklin/Penry* claim despite Williams' failure to comply with the Texas contemporaneous-objection rule. We stated that "[w]e cannot close our eyes to the fact that the granting of certiorari by the Supreme Court in *Franklin* has at least raised the possibility that what had become accepted as established legal authority may be modified, at least to some extent."[4]

Since *Williams*, however, several panels of this circuit have followed a different course and have declined to rule on the merits of the *Franklin/Penry* claim due to the absence of legal cause for trial counsel's failure to object to the court's charge at the punishment phase of the trial and the failure of trial counsel to request an instruction on mitigating evidence.[5] In the *Bridge* cases, cited in the preceding footnote, the court initially followed the *Williams* line of reasoning and addressed the merits of Bridge's *Franklin/Penry* claim despite the absence of a contemporaneous objection by Bridge's trial counsel. In *Bridge I*, the court stated:

> The second reason not to accept the procedural bar in this case is that the issue of mitigation under the Texas statute seemed to have been settled favorably to the state in the case upholding the constitutionality of the Texas capital punishment statute. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). But the issue of the constitutionality of the Texas plan was revived by the Supreme Court grant of certiorari in *Franklin v. Lynaugh, cert. granted,* —— U.S. ——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987), *aff'd in* —— U.S. ——, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) and *Penry v. Lynaugh*, 832 F.2d 915 (5th Cir.1987), *cert.*

*granted,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). To deny Bridge the right to raise this revived issue in this capital case would be highly prejudicial. *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

This case, therefore, falls within the established exception to the procedural bar through the failure of the state courts to rely fully upon it and by the extreme prejudice resulting from a later revival of what was considered to be a settled question. Thus, we can decide this appeal on the merits of the motion for a certificate of probable cause to appeal the denial by the Federal District Court of his petition for habeas corpus.[6]

In *Bridge II*, the court reaffirmed the above holding.[7] Thereafter, in a one paragraph opinion, the panel in *Bridge III* withdrew its earlier reasoning in *Bridge I* and *Bridge II* and, without referring to *Williams*, rested its denial of habeas relief as to the *Franklin/Penry* claim on the absence of legal cause for the failure of Bridge to raise the *"Franklin"* issue at trial.[8]

At this stage, I would follow the *Williams* opinion, as the earlier decision on this point, and decline to apply the contemporaneous-objection rule to King's *Franklin/Penry/Hitchcock* claims and address the merits of these issues.

On the merits of these claims, I am bound by the precedents of this circuit and, therefore, concur in the opinion denying the application for a stay on those issues.

As I have already noted, however, the Supreme Court has granted an application for a writ in *Penry v. Lynaugh*,[9] rendered an opinion in *Franklin v. Lynaugh*[10] in

---

**3.** 837 F.2d 1294 (5th Cir.1988).

**4.** *Williams*, 837 F.2d at 1296.

**5.** *See Selvage v. Lynaugh*, 842 F.2d 89 (5th Cir. 1988); *Bridge v. Lynaugh*, 863 F.2d 370 (5th Cir.1988) (*Bridge III*), replacing *Bridge v. Lynaugh*, 860 F.2d 162 (5th Cir.1988) (*Bridge II*), replacing *Bridge v. Lynaugh*, 856 F.2d 712 (5th Cir.1988) (*Bridge I*).

**6.** *Bridge I*, 856 F.2d at 714.

**7.** *See Bridge II*, 860 F.2d at 163–64.

**8.** *See Bridge III*, 863 F.2d 370.

**9.** 832 F.2d 915 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988).

**10.** —— U.S. —— 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).

which the concurring opinion of Justices O'Connor and Blackmun is particularly relevant,[11] and granted stays pending consideration of writ applications in *Selvage v. Lynaugh*,[12] *Bridge v. Lynaugh*,[13] *Bell v. Lynaugh*,[14] and *Hawkins v. Lynaugh*.[15]

The cumulative effect of these actions seems to me to undermine the continuing validity of the Fifth Circuit precedents and demonstrates that reasonable jurists might find both that the Supreme Court decisions in those cases would be dispositive of the issues in this capital case and that a stay should be granted pending the outcome of those events. I, therefore, urge the Supreme Court to grant a stay pending its determination of *Penry* and the writ applications in *Selvage, Bridge, Bell*, and *Hawkins.*

JOHNSON, Circuit Judge, concurring:

With the reservations expressed below, I concur in the result only of the opinion by the majority.

In concurring in the result only of the majority, I join in the conclusion reached by Judge Rubin in his concurrence, that King is not procedurally barred from raising the *Franklin/Penry/Hitchcock* issues by the contemporaneous objection rule invoked by the State. *See Williams v. Lynaugh*, 837 F.2d 1294 (5th Cir.1988). Further, I join in Judge Rubin's plea to the Supreme Court to grant a stay of King's execution pending the Supreme Court's disposition of the *Penry* case. In this regard, it is noted that in almost every instance wherein an application for a stay has been filed with the Supreme Court in a Texas capital case since the Supreme Court's decision to review the validity of the Texas capital sentencing scheme in *Franklin* and *Penry*, the Supreme Court has granted a stay of execution. *See Williams v. Lynaugh*, 837 F.2d 1294, 1295–96 (5th Cir.1988), *stay granted*, — U.S. —, 108 S.Ct. 1000, 98

L.Ed.2d 967 (1988); *Selvage v. Lynaugh*, 842 F.2d 89 (5th Cir.1988), *stay granted*, — U.S. —, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988); *Bell v. Lynaugh*, 858 F.2d 978 (5th Cir.1988), *stay granted*, — U.S. —, 109 S.Ct. 254, 102 L.Ed.2d 243 (1988); *Bridge v. Lynaugh*, 856 F.2d 712 (5th Cir. 1988), *stay granted*, — U.S. —, 109 S.Ct. 20, 101 L.Ed.2d 972 (1988); *Hawkins v. Lynaugh*, 862 F.2d 487 (5th Cir.1988), *stay granted*, — U.S. —, 109 S.Ct. 569, 102 L.Ed.2d 593 (1988).

It may be that, in *Penry*, the Supreme Court upholds the validity of the Texas capital scheme as it relates to the jury's consideration of mitigating evidence; however, it would be the height of inconsistency to grant relief in the form of a stay of execution in almost all Texas capital cases until *Penry* is resolved, but to deny such relief to other Texas capital defendants who raise a *Penry* claim. As stated by Justice Brennan in his dissent from the Supreme Court's denial of a stay of execution in *Streetman v. Lynaugh*, — U.S. —, 108 S.Ct. 588, 98 L.Ed.2d 634 (1988), "[D]eath is different. Due to the unique nature of the penalty, the relief that we could give any other type of habeas corpus petitioner is unavailable to Streetman. His case will be moot long before we can resolve *Franklin*—he will be dead." 108 S.Ct. at 590. In the instant appeal, unless stayed, King's case will also be moot by the time the *Penry* decision is made—he will also be dead. Such a result is the essence of arbitrary and capricious conduct by government—conduct in violation of the eighth amendment to the Constitution.

---

11. 108 S.Ct. at 2332–35.

12. 842 F.2d 89 (5th Cir.), *stay granted*, — U.S. —, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988).

13. 856 F.2d 712 (5th Cir.), *stay granted*, — U.S. —, 109 S.Ct. 20, 101 L.Ed.2d 972 (1988).

14. 858 F.2d 978 (5th Cir.), *stay granted*, — U.S. —, 109 S.Ct. 254, 102 L.Ed.2d 243 (1988).

15. 862 F.2d 482 (5th Cir.), *stay granted*, — U.S. —, 109 S.Ct. 569, 102 L.Ed.2d 593 (1988).