Stephen Albert McCOY,
Petitioner–Appellant,

v.

James A. LYNAUGH, Director Texas Department of Corrections,
Respondent–Appellee.

No. 89–2502.

United States Court of Appeals,
Fifth Circuit.

May 22, 1989.

**956**

Karen Zellars, Houston, Tex., for petitioner-appellant.

Robert S. Walt, Atty. Gen., Dana E. Parker, Asst. Atty. Gen., Enforcement Div., Austin, Tex., for respondent-appellee.

Before WILLIAMS, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Petitioner Stephen Albert McCoy was convicted of capital murder and sentenced to death. The district court denied his petition for writ of habeas corpus and stay of execution and declined to hold an evidentiary hearing. Before us are McCoy's motions for stay of execution and certificate of probable cause to appeal, the latter of which may only be granted if a petitioner makes a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). Finding that McCoy's claims are either procedurally barred or lack merit, we deny the motions for stay of execution and certificate of probable cause.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts of McCoy's capital crime come from his taped confession introduced at his trial and the testimony of an accomplice to the crime. On December 31, 1980, Cynthia Darlene Johnson was in an automobile accident on a Houston freeway and suffered a head injury. McCoy, James Paster, and Gary LeBlanc drove by and asked Johnson whether she needed help. She responded that she did not. McCoy, Paster, and LeBlanc dropped off the female passengers in their car and returned to the site of Cynthia Johnson's accident. McCoy persuaded her to get into their car. They drove to a warehouse where McCoy and the others forced her to perform various sexual acts with each of them. LeBlanc testified that McCoy and Paster threatened her with a gun during the rape. McCoy admitted in his confession that he and LeBlanc then held Cynthia Johnson while Paster strangled her with a cord. Paster then drove a nail up her nostril. They placed her body in the trunk of the car, picked up their other female companions and finally discarded Cynthia Johnson's body.

At the punishment phase of McCoy's trial, additional portions of McCoy's taped confession were introduced in which he described his role in two other grisly slayings. On October 25, 1980, he participated in the contract murder (for $1,000) of Robert Howard. Although it was Paster who sneaked up behind Howard and shot him in the head with a pistol, McCoy admitted that he was armed with a shotgun at the time. Sometime in mid-November, McCoy, Paster and LeBlanc forced Diana Trevino Oliver into their car, took her to a field and raped her. McCoy admitted that he stabbed her several times in the chest. Diana Oliver's body was found on November 19, 1980 with knife and gun wounds.

On April 19, 1983, McCoy was indicted for the capital murder of Cynthia Johnson. On July 26, 1984, after a three day trial, the jury found McCoy guilty of capital

murder, and the next day the jury answered the special issues in the affirmative and McCoy was sentenced to death. On June 18, 1986, McCoy's conviction and sentence were affirmed by the Texas Court of Criminal Appeals, *McCoy v. State*, 713 S.W.2d 940 (Tex.Crim.App.1986) (en banc). Certiorari was denied by the Supreme Court on March 23, 1987, *McCoy v. Texas*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

The State set McCoy's execution for June 25, 1987. On June 12, McCoy filed a *pro se* application for stay of execution in the United States District Court for the Southern District of Texas.[1] The application for stay was granted by the federal district court on June 19, 1987. On July 28, 1987, the district court appointed Karen Zellars to represent McCoy and directed McCoy to file an amended petition within thirty days (later extended for an additional sixty days). On October 29, 1987, the federal district court granted McCoy's motion to dismiss the action without prejudice to allow McCoy to raise unexhausted claims in state court.

On January 27, 1988, McCoy filed his first petition for writ of habeas corpus in state court. That petition was supplemented on January 20, 1989. On February 20, 1989, the state habeas court issued its findings of fact and conclusions of law, recommending denial of the writ. On February 23, the state habeas court scheduled McCoy's execution for March 29, 1989. On March 7, the Texas Court of Criminal appeals denied the writ application, finding the trial court's findings and conclusions to be supported by the record. *Ex parte McCoy*, No. 18,092–01 (Tex.Crim.App. March 7, 1989). McCoy's motion for rehearing was denied on March 10.

On March 23, McCoy filed his second writ of habeas corpus in state court alleging that he was incompetent to be executed. He concurrently filed a habeas petition in the federal district court and a request for stay of execution. Later that day, the state court modified McCoy's execution date for the last time. Currently, McCoy is scheduled to be executed before

sunrise on May 24, 1989. The federal district court dismissed McCoy's federal habeas petition without prejudice once again to allow him to exhaust his state remedies. On April 19, McCoy filed a supplemental habeas petition in state court. On April 27, the state habeas court issued its factual findings and legal conclusions, and recommended that the writ be denied. The Court of Criminal Appeals denied the writ based on the findings and conclusions of the state habeas court. *Ex parte McCoy*, No. 18,-092–03 (Tex.Crim.App. May 9, 1989).

On May 10, McCoy filed a petition for writ of habeas corpus in the federal district court, which comprised the grounds of his Supplemental Petition filed in state habeas court, and requested a stay of execution. At a hearing on May 16, McCoy moved to amend his federal habeas petition to include the grounds for relief earlier dismissed without prejudice. The district court granted the motion. The combined federal habeas petition raises thirteen grounds for relief.

On May 19, the district court issued its factual findings and legal conclusions. *McCoy v. Lynaugh*, Civ. Action No. H–89–912, mem. op. (S.D.Tex. May 19, 1989). In a thorough and well reasoned opinion, the district addressed and denied each ground for relief, relying on procedural default and denial on the merits. For essentially the same reasons, we affirm the denial of relief for the petitioner.

## II. CLAIMS PROCEDURALLY DEFAULTED

The following grounds for relief were not raised at trial in accordance with Texas' contemporaneous objection rule and are procedurally barred in the federal court:

(1) that McCoy was denied due process by the state's use of an altered tape-recording of his confession (Ground for Relief Nine);

(2) that the Texas Capital Sentencing Statute is unconstitutional in that it prohibits the informing of the jury that a sole juror's negative answer to either of

---

1. McCoy was represented by counsel in his direct review and certiorari review.

the special issues will preclude the imposition of the death penalty (Supplemental Petition, Ground for Relief Twelve); and

(3) that the Texas Capital Sentencing Statute is unconstitutional because it precluded McCoy's counsel from investigating and presenting evidence in mitigation of the death sentence (Ground Thirteen).

In its ruling on McCoy's first state habeas petition, the state habeas court concluded that "[Petitioner] is procedurally barred from raising ground for relief ten [federal Ground for Relief Nine] wherein he complains that the tape-recorded confession admitted into evidence was altered such that [Petitioner] was denied a fair trial and due process of law." *Ex parte McCoy,* No. 377288-A (Dist. Ct. Harris County, 177th Judicial Dist. of Texas, Feb. 20, 1989) (Conclusion of Law 13). The Texas Court of Criminal Appeals denied relief on this ground, noting that "[t]he findings and conclusions entered by the [state habeas] court are supported by the record." *Ex parte McCoy,* No. 18,092–01 (Tex.Crim.App. March 7, 1989).

In its ruling on McCoy's Supplemental Petition, the state habeas court concluded that "[Petitioner] is procedurally barred from raising supplemental ground[s] for relief three [and four] [federal Supplemental Petition Ground for Relief Twelve and Thirteen] in that he did not object at the time of trial to the capital murder sentencing scheme on the basis that it is unconstitutional for the reasons articulated in [those] ground[s]." *Ex parte McCoy,* No. 377288-B (Dist.Ct. of Harris County, 177th Judicial Dist. of Texas, April 27, 1989) (Conclusions of Law 4 and 5). The Texas Court of Criminal Appeals denied relief "on the basis of the [state habeas] court's findings of fact and conclusions of law." *Ex parte McCoy,* 18,092–03 (Tex.Crim.App. May 9, 1989).

■ Thus, under *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), we are procedurally barred from considering these issues on federal habeas review unless McCoy can show "good cause" for his noncompliance with state procedures and actu-

al "prejudice" resulting from the alleged constitutional violation. *See also Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Without reaching the issue of prejudice, we find that McCoy has failed to make the required showing of "good cause" for his noncompliance with state procedures.

McCoy does not attempt to explain his failure to object to the introduction of the tape-recorded confession on the ground that it was altered. Such a ground for objection is certainly not novel or unknowable. Second, in *King v. Lynaugh,* 868 F.2d 1400, 1402 (5th Cir.1989), we held that King was procedurally barred from raising whether the jury was properly instructed "on what would be the consequences of 'yes' and 'no' answers to the special issues" because "no attempt [was] made to explain why trial counsel did not object to the jury charge." No attempt is made to explain McCoy's trial counsel's failure to object either. Moreover, there has been no change of law that would make these claims any more or less meritorious.

■ The same is true for McCoy's remaining challenge to the Texas Capital Sentencing Statute, that it precluded McCoy's counsel from investigating and presenting evidence in mitigation of the death sentence. McCoy argues that the grant of a stay of execution in *Selvage v. Lynaugh,* 842 F.2d 89 (5th Cir.), *stay granted,* —— U.S. ——, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988) makes reliance on that case "dangerous." Our holding on procedural bar is unaffected by the grant of a stay of execution by the Supreme Court. We held that an almost identical challenge to the Texas Sentencing Statute was "not a recently found legal theory not knowable by competent trial counsel." *Selvage v. Lynaugh,* 842 F.2d at 93–94. *See also King v. Lynaugh,* 868 F.2d at 1403; *Bridge v. Lynaugh,* 863 F.2d 370 (5th Cir.1989). McCoy's reliance on the Supreme Court's grant of certiorari in *Franklin v. Lynaugh,* —— U.S. ——, 108 S.Ct. 221, 98

L.Ed.2d 180 (1988) and *Penry v. Lynaugh,* — U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988) as "reviving" his previously foreclosed claim is misguided. As we stated in *King v. Lynaugh:*

> The Supreme Court's grant of certiorari in *Penry* and *Franklin* does not alter the fact that such claims have been well known to trial counsel, especially since counsel preserved Penry's and Franklin's claims in 1980 and 1982 respectively. We are thus bound by our controlling precedents in *Selvage* and *Bridge* until this court, en banc, holds otherwise. For this reason, we are barred from considering the merits of these grounds and deny the relief requested.

868 F.2d at 1403 (citations omitted). The Supreme Court subsequently denied the stay and King was executed by the State of Texas. —— U.S. ——, 109 S.Ct. 1564, 103 L.Ed.2d 930 (1989). We are accordingly barred from considering the merits of these three grounds for relief.

## III. EXCLUSION OF VENIRE-MEMBERS WEAVER, FOLEY AND FINNEY (GROUND FOR RELIEF ONE)

The parties contest whether McCoy's challenges to the exclusion of these prospective jurors for cause was barred by his counsel's failure to object at trial. The Texas Court of Criminal Appeals, on direct review, held that McCoy waived his challenge. *McCoy v. State,* 713 S.W.2d at 953. This holding was clear and explicit pursuant to *Harris v. Reed,* —— U.S. ——, 109 S.Ct. 1038, 1039–40, 103 L.Ed.2d 308 (1989).

On state habeas review, McCoy again raised this claim as well as a related ineffective assistance of counsel claim. The state habeas court did not squarely address the first claim as such. It held, rather, that trial counsel were not constitutionally ineffective for failure to challenge the exclusion of these veniremembers because, under the first prong of *Strickland,* such challenges lacked merit. Counsel for McCoy may contend either (1) that the "last state court" to address the challenge of these jurors did so "on the merits," albeit in the context of another issue, or (2) that the "last state court" did not explicitly rely upon procedural bar as to the issue of excluding these veniremembers. In either case, according to McCoy, no procedural bar arises following the adoption in *Harris v. Reed* of the "plain statement" rule. *Harris,* 109 S.Ct. at 1039–40 ("a procedural default does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar").

How we characterize our scope of review makes no difference to the result. If the claim is procedurally barred, McCoy loses in his application for federal habeas relief. If it is not procedurally barred, he still loses. The discussions in Part IV and VIII(1) below explain that the trial court's basis for excluding veniremembers is a finding of fact and that, in each of these three cases, the prospective jurors admitted they could not impose the death penalty. The appropriate testimony of each juror is cited and has been reviewed by us. Whether we are procedurally barred from addressing this issue would seem a moot point.

There is no doubt that *Harris* can be literally read to prevent the use of procedural bar here. To do so, however, undermines the finality of state review procedures and encourages the petitioner's repetitious raising of frivolous points in hopes that some last court, somewhere, will not incant the magic phrase of procedural bar. Here, the Texas Court of Criminal Appeals said precisely that McCoy's claim was waived. As a court answerable to the Court of Criminal Appeals, the state habeas court had no authority to go behind or modify that holding, and it did not do so. A proper concern for state procedures should suggest that the issue, although not explicitly declared procedurally barred by the state habeas court, is in fact so barred.

If one alternatively reads *Harris* to dispense with procedural bar of the juror challenge on the merits because the state habeas court treated it within the sixth amend-

ment ineffectiveness of counsel claim, another unpalatable situation arises. This result leads to the reverification of every challenge not made at trial and completely undoes the theory of procedural bar. Such a catch–22 would seem avoidable under *Harris* if the state habeas court adds that it has no power to review the merits of such underlying issues because of the prior court's finding of waiver. Yet, this conclusion should seem superfluous where the prior court was the state's highest tribunal.

We resolve the apparent tension within *Harris* by alternative holdings: if the claim was procedurally barred, we pretermit its consideration; if it was not procedurally barred, we have considered and rejected it on the merits.

## IV. EXCLUSION OF VENIREMEMBER TUCKER

Texas law provides that either the state or defense may challenge a prospective juror for cause if he has a bias or prejudice for or against the defendant. Tex.Code Crim.Proc.Ann. art. 35.16(a)(9) (Vernon 1989). In addition, we held in *Brooks v. Estelle*, 697 F.2d 586, 589 (5th Cir.1982), that a "state is entitled to exclude [prospective] jurors who state they cannot follow a constitutional state law." The state challenged prospective juror Linda Tucker for cause and the trial court struck her from the venire. In Ground for Relief Two, McCoy contends that the trial court's exclusion of Tucker violates his rights under the Fourteenth Amendment.

■ We are mindful that a court's exclusion of jurors for cause is a question of fact, *Wainwright v. Witt*, 469 U.S. 412, 427–29, 105 S.Ct. 844, 853–54, 83 L.Ed.2d 841 (1985), because 28 U.S.C. § 2254(d) (1982) requires federal courts in habeas proceedings to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported in the record. *See Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). In addition, we must accept the

findings of the federal district court on this issue unless they are clearly erroneous. Fed.R.Civ.P. 52(a). *See* Rule 11 Governing Section 2254 Cases (adopting the Federal Rules of Civil Procedure if not inconsistent with the federal Habeas Rules).

■ The state habeas court found Tucker had been properly excluded under state law because "she was particularly biased against rapists." *Ex parte McCoy*, No. 377288–A (Finding of Fact 27; Conclusion of Law 6(a)). The federal district court also rejected the argument that Tucker was biased against the death penalty:

This Court finds, instead, that Ms. Tucker was properly excluded under state law. Her voir dire testimony revealed her strong feelings against rapists which, in turn, might have compelled her to hold the State to a lesser burden of proof than is required by law. Petitioner's claim here is meritless.

We find substantial evidence in the record to support the state habeas and federal district courts' findings. The excerpt of the voir dire contained in the federal district court's opinion is illustrative. *McCoy v. Lynaugh*, mem. op. at 7 (venire member Tucker said "I don't think I could [follow the law]" in a case alleging that a death has resulted during the commission of an aggravated rape). Thus, Tucker was properly excluded under state law where she admitted that she could not follow the law. *Brooks v. Estelle*, 697 F.2d at 589.[2]

## V. COMPETENCY TO STAND TRIAL

■ In Ground for Relief Three, McCoy alleges that he was not legally competent to stand trial. A defendant is competent if he has sufficient ability at the time of trial "to consult with his lawyer with a reasonable degree of rational understanding" and "he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). McCoy alleges that he was legally incompe-

---

**2.** We do not consider the *Wainwright v. Witt* standard for evaluating a prospective juror's bias against the death penalty because Tucker

was not excluded as a result of any bias against the death penalty.

tent to stand trial because: he has a history of psychological illness; he twice tried to commit suicide waiting for and during his 1983 trial; and the Harris County Sheriff's Department had administered "mind altering drugs" to him.

After the first suicide attempt, the state trial court ordered a competency evaluation of McCoy. The state habeas court reviewed the findings of the trial court and the report of Dr. Jerome Brown who had examined McCoy in light of the attempt. The state habeas court found that:

> (1) Dr. Brown was aware of McCoy's attempted suicide and medication he was on (Finding of Fact 19);
>
> (2) Dr. Brown believed "McCoy demonstrated a rational as well as factual understanding of the proceedings and appeared to possess the ability to consult with his attorney with a reasonable degree of rational understanding" (Finding of Fact 21); and
>
> (3) "There was no evidence to support a finding that Applicant was incompetent to stand trial." (Finding of Fact 24).

*Ex parte McCoy*, No. 377288–A. McCoy's counsel's affidavits likewise reflect that they did not consider him incompetent during trial. The federal district court found "no evidence that McCoy was incompetent at trial time or during trial." *McCoy v. Lynaugh*, mem. op. at 9.

We have examined the report Dr. Jerome Brown filed with the state trial court at the time of McCoy's capital murder trial and find sufficient support for the findings of the state habeas and federal district courts. We conclude that McCoy was legally competent to stand trial and his Ground for Relief Three is without merit.

## VI. IMPROPER USE OF HYPOTHETICALS DURING VOIR DIRE

In Ground for Relief Four, McCoy asserts that the State violated his right to due process when it used improper hypotheticals in voir dire to distinguish between the statutory terms "intentional" and "deliberate." McCoy alleges that this confused the distinction between the terms and led the jury to automatically answer the special issue on "deliberateness" in the affirmative after finding McCoy guilty of "intentional" capital murder.

■ Assuming, *arguendo*, that such hypotheticals would constitute a violation of due process, McCoy is still not entitled to relief based on mere conclusory allegations. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir.1982), *cert. denied*, 461 U.S. 951, 103 S.Ct. 2419, 77 L.Ed.2d 1310 (1983). The state habeas court noted that McCoy failed to point to one such misleading hypothetical. *Ex parte McCoy*, No. 377288–A (Finding of Fact 63). The federal district court examined the one allegedly improper hypothetical that was identified in McCoy's federal filing. (*See* Transcript, Volume III, pp. 301–18). The federal district court found "no evidence of impropriety in the hypothetical to which Petitioner objects." Likewise, we have examined the allegedly improper hypothetical addressed to excluded venire member Linda Tucker, and we find no statements that would mislead the prospective jurors. Accordingly, we deny relief on Ground Four.

## VII. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE INAPPLICABILITY OF THE LAW OF PARTIES (SUPPLEMENTAL PETITION, GROUND TEN)

■ McCoy asserts that he was entitled to an instruction that the law of parties *may not* be considered by the jury in assessing punishment or in answering the special issues in a capital case. The case on which he relies, *Nichols v. State*, 754 S.W.2d 185, 199 (Tex.Crim.App.1988), states only that such an instruction may be given upon request. *Nichols* expressly holds the court is not obliged to so charge the jury. Assuming for present purposes that McCoy's counsel expressly requested such an instruction, and that it was erroneously denied by the trial court, we nevertheless find no constitutional violation from this omission. This court has previously held that the special issues submitted to the jury in Texas capital punishment cases sufficiently focus on the defendant's per-

sonal conduct and culpability for his crime. *Thompson v. Lynaugh,* 821 F.2d 1054, 1063 (5th Cir.), *cert. denied,* 483 U.S. 1035, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987); *Skillern v. Estelle,* 720 F.2d 839, 847–48 (5th Cir. 1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). *See also Kirkpatrick v. Blackburn,* 777 F.2d 272, 286–88 (5th Cir.1985) (even though co-defendants are involved, "when a defendant personally intends to inflict great bodily harm and succeeds in producing death, his personal involvement and individual culpability is sufficiently established that the capital sentence is not cruel and unusual"), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

In three separate Grounds for Relief, McCoy advances nine claims founded in the sixth amendment right to effective assistance of counsel. All of these claims are raised for the first time in his habeas petitions.

Ground for Relief Five alleges that trial counsel were ineffective due to their

1. Failure to object to the exclusion of prospective jurors Tucker, Weaver, Foley, and Finney;

2. Failure to object to the state's use of improper hypotheticals during *voir dire;*

3. Failure to request a hearing to determine McCoy's competency to stand trial;

4. Failure to investigate adequately McCoy's background for evidence in mitigation of the death sentence; and

5. Failure to offer available mitigation evidence at the punishment phase of the trial.

Ground for Relief Eleven of the Supplemental Petition alleges that trial counsel were ineffective for their

6. Failure to request an instruction on the inapplicability of the law of the parties in the jury's consideration of the special issues.

Ground for Relief Eleven of the Supplemental Petition also alleges that appellate counsel was ineffective for his

7. Failure to raise a claim on direct appeal regarding the failure of the trial court to instruct the jury on the inapplicability of the law of the parties in their consideration of the special issues.

Ground for Relief Six alleges that appellate counsel was ineffective for his

8. Failure to raise a claim on direct appeal regarding the exclusion of venire member Tucker;

9. Failure to raise a claim on direct appeal regarding the trial court's failure to instruct the jury on their consideration of mitigating evidence.

We review the ineffective assistance of trial counsel claims based on the familiar two-prong test of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984);

First ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In our review, we are mindful that "judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, 104 S.Ct. at 2065, and that we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. at 2066.

In reviewing claims of ineffective assistance of appellate counsel, we apply the *Strickland* two prong test, except that a petitioner must demonstrate that, but for appellate counsel's constitutionally defi-

cient performance, the results of his *appeal* would have been different. *Lockhart v. McCotter,* 782 F.2d 1275, 1283 (5th Cir. 1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987).

1. *Failure to object to the exclusion of prospective jurors Tucker, Weaver, Foley and Finney.*

 To determine whether trial counsel were deficient for their failure to object to the exclusion of these venire members, we first examine whether there was a legal basis for such an objection. In this matter, we are bound by the state habeas and federal district courts' findings since a trial court's exclusion of jurors for cause is a question of fact.

The state habeas court found that Foley's objection to the death penalty was "so strong that she would refuse to participate in the answering of the two special issues on punishment." *Ex Parte McCoy,* No. 377288–A (Findings of Fact 31–33). The state habeas court found that Finney indicated that "under no circumstances would she even sit as a juror and vote for the death penalty." *Id.* (Findings of Fact 36 and 37). The state habeas court also found that Weaver indicated that "under no circumstances could she ever answer the two special issues 'yes' regardless of the evidence." *Id.* (Findings of Fact 40–42). Finally, the state habeas court found that "Linda Tucker was excluded because she was particularly biased against rapists." *Id.* (Finding of Fact 27). The state habeas court based its conclusion of law that trial counsel were not ineffective for their failure to challenge these exclusions on its separate findings that the exclusion of Tucker, Foley, Finney, and Weaver was proper. *Id.* (Conclusion of Law 6, subpoints a, b, c, and d).

We have reviewed the trial transcript relating to the *voir dire* of these prospective jurors and find substantial support in the record for the findings of the state habeas court. Therefore, we accord the presumption of correctness of § 2254(d) to these findings. In addition, the federal district court found "that Petitioner has not demonstrated that trial counsel's failure to object constitutes anything other than a reasoned tactical choice based on counsel's assessment that any such objection would be meritless." The federal district court also found that McCoy had "failed to plead or prove the requisite constitutional prejudice under *Strickland.*" We agree.

We are presented with three facts: (1) the exclusion of venire members Tucker, Foley, Finney, and Weaver was proper; (2) that trial counsel realized this and consciously chose not to raise a meritless challenge; and (3) that McCoy has failed to plead or prove any prejudice from the alleged deficiency. We therefore deny relief on this claim.

2. *Failure to object to the state's use of improper hypotheticals during voir dire.*

We noted earlier that the federal district court found "no evidence that *any* 'improper hypotheticals' were advanced by the State in voir dire." *McCoy v. Lynaugh,* mem. op. at 11 (emphasis added). As we stated previously, we agree with the federal district court that the one hypothetical identified was not improper. There simply can be no deficiency, constitutional or otherwise, in failing to object to statements that either do not exist or are not improper. Accordingly, we deny relief on this claim.

3. *Failure to request a hearing to determine McCoy's competency to stand trial.*

 In addition to finding that McCoy was legally competent to stand trial, the state habeas court made the following additional findings:

(1) "Defense counsel both concurred with the finding made by Dr. Jerome Brown, concerning Applicant's competency to stand trial." (Finding of Fact 22);

(2) "Defense counsel reasonably relied on both the competency evaluation and their own perceptions of Applicant and did not request a hearing to determine Applicant's competency to stand trial." (Finding of Fact 23); and

(3) "There was no evidence to support a finding that Applicant was incompetent to stand trial." (Finding of Fact 24). *Ex parte McCoy,* No. 377288–A. In dismissing McCoy's ineffective assistance of counsel claim, the federal district court again noted that "there is no evidence to demonstrate that Petitioner was incompetent." *McCoy v. Lynaugh,* mem. op. at 11. There can be no deficiency in failing to request a competency hearing where there is no evidence of incompetency. Nor can McCoy show that had counsel filed such a motion that the trial court would have overturned its competency ruling and conducted a hearing.

4. *Failure to adequately investigate McCoy's background for evidence in mitigation of the death sentence.*

5. *Failure to offer available mitigation evidence at the punishment phase of the trial.*

■ McCoy contends that trial counsel rendered ineffective assistance in failing to adequately investigate his background or to present available mitigating evidence at the punishment phase of trial. As examples, McCoy points out that counsel failed to introduce his good military service record and failed to call certain witnesses, including his mother and sister.

Such examples, in themselves, do not prove that counsel were ineffective. We have stated that counsel's decision not to present mitigating evidence "if based on an informed and reasoned practical judgment, is well within the range of practical choices not to be second-guessed." *Mattheson v. King,* 751 F.2d 1432, 1441 (5th Cir.1985) (citations omitted).

Responding to this contention, the state offered affidavits of both of McCoy's trial counsel. These affidavits indicate that prior to trial, McCoy gave defense counsel a list of persons to subpoena to testify on behalf of McCoy in the punishment phase. Defense counsel subpoenaed and interviewed the persons on the list. None of the persons interviewed by defense counsel had anything positive to say on behalf of McCoy; some knew his reputation to be bad. As a matter of trial strategy, defense counsel did not call witnesses to testify at the punishment. Defense counsel were concerned about opening the door to enabling the State to inquire into instances of prior bad acts of McCoy, including beating his wife and threatening his children.

Based on these facts and its review of all the affidavits filed in state court, the federal district court found "that counsel's actions were a product of trial strategy ..." *McCoy v. Lynaugh,* mem. op. at 13.

Almost five years after trial, McCoy argues that such a trial strategy was not good enough. Instead, he contends that certain witnesses should have been called, and other witnesses should have been interviewed, and certain other evidence should have been introduced. But as we stated in *King v. Lynaugh:* "second-guessing is not the test for ineffective assistance of counsel." 868 F.2d at 1405. We again quote the Supreme Court's instruction in *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, that:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

We conclude that at the very least, counsel for McCoy conducted their defense "within the wide range of professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2066.

6. *Failure of trial counsel to request an instruction on the inapplicability of the law of the parties in the jury's consideration of the special issues.*

7. *Failure of appellate counsel to raise a claim on direct appeal regarding the failure of the trial court to instruct the jury on the inapplicability of the law of the parties in their consideration of the special issues.*

■ Previously, we concluded that an instruction that the law of the parties does

not apply in answering the special issues would be redundant, and the failure of the trial court to issue such an instruction *sua sponte* did not deprive McCoy of due process. For this reason, it could not be constitutionally deficient conduct for appellate counsel to fail to raise the trial court's alleged "failure" on direct appeal.

Nevertheless, McCoy argues that trial counsel were constitutionally ineffective in failing to request such an instruction. The state habeas court found that:

> (1) "During closing remarks, trial counsel informed the jury that they (the jury) must look at the conduct of Applicant in determining the answer to special issue number one ..." (Finding of Fact 19);

> (2) "During closing remarks, the prosecutor pointed out the conduct of the Applicant that supported a finding of deliberateness on his (Applicant's) part, and did not dispute or undermine trial counsel's earlier explanation to the jury concerning the inapplicability of the law of parties to the punishment special issues." (Finding of Fact 20); and

> (3) "The evidence adduced at trial concerning Applicant's conduct is sufficient to support the jury's answers to the special issues." (Finding of Fact 21).

*Ex parte McCoy*, 377288–B. Then, at the punishment phase of trial, the jury was asked: "Was the conduct *of the defendant, Stephen Albert McCoy*, that caused the death of the deceased committed deliberately and with a reasonable expectation that the death of the deceased or another would result?" (emphasis added) We find no deficiency in the failure to ask for an instruction that would have added nothing to what the jury was forced to consider in deciding special issue one.

The federal district court determined that even if the failure to ask for such an instruction was constitutionally deficient performance, that McCoy "can show no prejudice from their failure to do so." *McCoy v. Lynaugh*, mem. op. at 14. We agree. Given the instruction from defense counsel and the narrow focus of the special issue, McCoy has failed to demonstrate

that the jury deliberations would have been different had the jury been instructed one more time that they were to consider McCoy's conduct alone. Accordingly, we deny relief on this ground.

8. *Failure of appellate counsel to raise a claim on direct appeal regarding the exclusion of prospective juror Tucker.*

We previously concluded that Tucker was properly excluded for cause under state law due to her bias against rapists. We based our conclusion on the findings of the state habeas court, which were affirmed by the Texas Court of Criminal Appeals. There can be no error in appellate counsel's failure to raise this meritless issue on direct appeal. The federal district court also concluded that there is no proof that the Texas Court of Criminal Appeals would have resolved the issue any differently had it been raised on direct appeal. *McCoy v. Lynaugh*, mem. op at 15. We agree. Therefore, there can be no prejudice from appellate counsel's failure to raise the issue. Since McCoy's claim fails under both prongs of *Strickland*, we deny relief.

9. *Failure of appellate counsel to raise a claim on direct appeal regarding the trial court's failure to instruct the jury on their consideration of mitigating evidence.*

At the punishment phase of trial, counsel for McCoy requested instructions concerning the jury's consideration of mitigating evidence. The trial court denied the request for instructions. Yet, the Texas Court of Criminal Appeals has consistently rejected the type of claim McCoy now urges should have been made on direct appeal. *Penry v. State*, 691 S.W.2d 636, 654 (Tex.Crim.App.1985); *Lackey v. State*, 638 S.W.2d 439, 455 (Tex.Crim.App.1982); *Quinones v. State*, 592 S.W.2d 933, 947 (Tex.Crim.App.1980).

The foregoing resolves the issue under both prongs of *Strickland*. *Strickland* does not require appellate counsel to raise every conceivable issue in order to be effec-

tive, especially where appellate counsel must consider their credibility before the appellate court. In addition, the state authority demonstrates that had counsel raised the issue on direct appeal, it is at best highly unlikely that the result of the appeal would have been different.

## IX. OTHER ISSUES

A. *Whether Texas capital sentencing statute is unconstitutional because it fails adequately to guide the jury in the application of mitigating evidence (Federal Petition, Ground Seven).*

■ The state habeas court found, and the record of the punishment phase of the trial confirms, that no mitigating evidence was offered on McCoy's behalf at that point in trial. Thus, he has no legal or factual basis on which to contest the Texas statute's alleged failure to incorporate mitigating evidence in the jury's sentencing determinations.

In his argument to the jury during the punishment phase, defense counsel did ask them to consider that McCoy's violent conduct was of recent origin and that he was motivated in part by fear of Paster and fear for his family's safety. If such argument is considered "mitigating," it does not run afoul of the concerns expressed by Justices O'Connor and Blackmun in *Franklin v. Lynaugh,* — U.S. ——, 108 S.Ct. 2320, 2333, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring). The fear expressed by the concurrence was over the possibility that certain mitigating evidence might not be relevant to the jury's determinations in the two special issues presented to the jury upon sentencing in a capital case. Here, however, defense counsel clearly contended that McCoy's fear of Paster should lead to a negative answer on the "deliberateness" inquiry in the first special issue. Counsel also suggested to the jury that because McCoy had not shown any violent tendencies when he was not associated with Paster, they should reject a finding of "future dangerousness" included in Special Issue Two. Such mitigating evidence as there was in McCoy's behalf thus bore directly on the special issues and could easily be considered by the jury.

B. *Constitutionality of Texas procedure for post-conviction relief (Federal Petition, Ground Eight).*

■ Without making any specific citation to Texas post-conviction procedure, McCoy contends that the procedure is unconstitutional on its face and as applied because he was denied relief without an evidentiary hearing in the state habeas court. He avers that his affidavits, filed in the state court on or about February 20, 1989, the same day the state habeas court entered its first order denying relief, created "disputed issues of material fact which require a determination of witness credibility for resolution."

The federal district court was uncertain whether the state habeas court actually considered these affidavits, which were filed nearly one full year after the petition for relief in state court. We note that these affidavits were available to the Texas Court of Criminal Appeals on review of the state court's determination. In any event, however, because there is no constitutional right to attack a state conviction collaterally, *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987), we fail to see how the constitution can be infringed by the state habeas court's failure by oversight to consider these affidavits. The state habeas court's omission does affect the deference that federal courts owe to its findings on the issue of counsel's competence.

C. *McCoy's request for an evidentiary hearing in federal court.*

By motion, McCoy requested an evidentiary hearing in the federal district court on the basis that the state habeas court entered factual findings without considering affidavits submitted by McCoy and that it resolved contested factual issues without affording him a hearing.

The district court properly responded to this complaint. In a federal habeas proceeding, no evidentiary hearing is required.

Rule 8, Rules Governing § 2254 Cases in the United States District Courts. We have held that, "to receive a federal evidentiary hearing, a petitioner must allege facts that, if proved, would entitle him to relief." *Wilson v. Butler*, 825 F.2d 879, 880 (5th Cir.1987) (citing *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963)), *cert. denied,* —— U.S. ——, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). We have reviewed the six affidavits submitted by McCoy, as did the district court, and we endorse its conclusion that these affidavits did not meet the standards set forth in *Wilson*. McCoy's burden was to plead facts establishing a likely denial of constitutionally effective representation under *Strickland v. Washington*. The affidavits material to this issue were those of McCoy himself, his mother and his sister. James Paster, McCoy's co-murderer, furnished an affidavit, and the other two affidavits concerned procedural details.

McCoy's affidavit contends that he was incompetent during trial, depressed and on drugs. Both McCoy's mother and sister say they attended trial, expected to be called as witnesses, and would have testified that Stephen was a dutiful son and brother and loving father. McCoy's mother, significantly, does not deny that he threatened his ex-wife, but says that the ex-wife provoked his anger. Her affidavit also says that defense counsel believed the D.A. would "tear her up" over McCoy's domestic disputes with his wife. McCoy's sister says he loved his two daughters and denies defense counsel's statement that she acknowledged to him her brother's bad reputation. None of these affidavits raises a substantial issue as to the ineffectiveness of McCoy's counsel. Even if the facts attested by McCoy, his mother and sister are fully correct, they reflect at most differences of opinion over the conduct of the defense. There is no evidence that counsel failed to discover some critically significant point or failed to investigate through McCoy all possible avenues of mitigation. Counsel's affidavits reflect that they subpoenaed and interviewed every person named by McCoy as a witness for this purpose. Holding a hearing would not

have resolved any material conflicts on competency of counsel, for there were none under the deferential *Strickland* standard.

## CONCLUSION

 We may grant a certificate of probable cause under Fed.R.App.Proc. 22(b) only by finding that there has been a substantial showing of the denial of a federal right. *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Similarly, a stay of execution may only be granted if a movant has made a showing (1) of a likelihood of success on the merits, (2) of irreparable injury in the absence of a stay, (3) that the granting of the stay would not substantially harm other parties, and (4) that granting the stay would serve the public interest. *Selvage v. Lynaugh*, 842 F.2d 89, 91 (5th Cir.1988). The foregoing discussion demonstrates that McCoy is not entitled to relief on the merits of his claims. We can find no basis for granting a certificate of probable cause nor for issuing a stay of his execution.

Motion for certificate of probable cause DENIED; stay of execution DENIED.

JERRE S. WILLIAMS, Circuit Judge, specially concurring:

I concur in the decision of the Court in this case and in all of the opinion of the Court except for Part III.

*Harris v. Reed*, decided just this year by the United States Supreme Court, establishes clearly that a procedural bar cannot apply unless the last state court to consider the issue (in this case the state habeas court) clearly and expressly states that its decision rests on the procedural bar. We have no such statement here. Thus, I would decide the issue considered in Part III of the opinion on the merits and not alternatively under the procedural bar.

But more important to me, I stress that I do not view with alarm as does the majority opinion that the loss of a procedural bar by the state poses serious consequences. This is a capital case. In such a case the procedural bar rule properly should be applied only with the utmost strictness be-

cause a life otherwise can depend upon a momentary lapse by a defense counsel in failing to say "I object."

No matter how many claims of constitutional error are made in a habeas capital case, the courts can readily consider the existence of a procedural bar on each one. They have to consider each on the merits anyhow if there is no procedural bar. When a life is at stake, the fact that one or a few claims may "fall through the cracks" and reach the merits is a small price to pay for utter and scrupulous fairness to an accused under sentence of death.

I repeat, I concur fully in the result and in the major aspects of the thorough majority opinion. Petitioner has been found guilty in a fair trial of the horrible heinous murder of a young innocent victim. The law authorizes procedural bars to habeas claims. But we must be sure the bar exists. In my view the issue of the disqualifications of the three jurors is an issue that we reach on the merits in evaluating the adequacy of representation by counsel. On the merits, there is no substantial issue and the disqualifications were in accordance with law. Our decision to deny a certificate of probable cause should rest upon that conclusion.