**James Emery PASTER,**
**Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas**
**Department of Corrections,**
**Respondent–Appellee.**

No. 88–6087.

United States Court of Appeals,
Fifth Circuit.

June 27, 1989.

Stanley G. Schneider, T. Donald Moran, Houston, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Petitioner James Emery Paster was convicted of capital murder and sentenced to death. The district court denied his petition for writ of habeas corpus and his mo-

tion for an evidentiary hearing in the district court and vacated his stay of execution. Before us are Paster's motions for stay of execution pending appeal and motion for certificate of probable cause to appeal, the latter of which may only be granted if a petitioner makes a "substantial showing of the denial of a federal right." *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). We affirm the district court's judgment and deny all relief requested by Paster.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts of Paster's capital crime come from his taped confession introduced at his trial and the testimony of an accomplice to the murder. In October, 1980, Paster and two accomplices, Stephen McCoy and Gary LeBlanc, agreed to kill Robert Edward Howard at the suggestion of Howard's ex-wife and her current husband. Paster sought and was promised $1,000 for the slaying. On October 25, Paster, McCoy and LeBlanc were told that Howard would be at the Legal Tender Club. They went to the parking lot, slit Howard's truck tire and waited for him to leave the club. When Howard noticed the flat tire, he opened his hood to get the jack. Paster approached from Howard's rear and shot him in the back of the head.

According to evidence introduced at the punishment phase of Paster's trial, he suggested that the men should seek out two other people to murder. Gary LeBlanc testified: "[Paster] said that we was all in it together and somebody was going to have to do another killing. All of us were going to have to do another killing.... He said that was [so] nobody can testify against somebody else." In mid-November, 1980, the trio forced Diana Trevino Oliver into their car, took her to a field, raped her, and

then McCoy stabbed her to death. On December 31, 1980, the trio found Cynthia Johnson stranded on the side of the road. They took her to a warehouse, raped her, and after LeBlanc unsuccessfully attempted to strangle her, Paster strangled her to death and drove a nail up her nose.[1]

On June 1, 1983, Paster was indicted for the capital murder of Robert Edward Howard. Earlier, police had tape recorded Paster's confession at Holman State Prison in Atmore, Alabama where Paster was serving three life sentences for robbery-assault, robbery in the first degree and burglary in the first degree. Paster filed a motion to suppress the confession at his trial and the state trial court conducted a *Jackson v. Denno* hearing.[2] After a second suppression hearing, the state trial court decided to admit the taped conversation.

On September 21, the jury found Paster guilty of capital murder. After a punishment hearing on September 22, 1983, Paster was sentenced to death. The Texas Court of Criminal Appeals affirmed Paster's conviction and sentence on direct appeal. *Paster v. State,* 701 S.W.2d 843 (Tex. Crim.App.1985) (en banc). The Supreme Court denied certiorari on February 24, 1986. *Paster v. Texas,* 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1987).

Paster's execution was first scheduled for June 2, 1986. In May 1986, Paster filed a state habeas petition through his attorney and a *pro se* request for stay of execution in federal district court. On May 27, 1986, the state habeas court withdrew the order scheduling Paster's execution and set an evidentiary hearing. The federal district court dismissed Paster's application for a stay of execution as moot. On October 24, 1986, after three days of hearings, the state habeas court entered findings of fact and conclusions of law and recommended that relief be denied. On March

---

1. McCoy has been executed for his participation in the murder of Cynthia Johnson.

2. *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 1783, 12 L.Ed.2d 908 (1964) (requiring "a fair hearing in which both the underlying factual issues and the voluntariness of [a] confession

are actually and reliably determined"). The state trial court dictated oral findings on the date of the hearing, August 22, 1983, and filed detailed factual findings on January 15, 1985 upon the order of the Texas Court of Criminal Appeals.

25, 1987, the Texas Court of Criminal Appeals denied habeas relief without written order based on the findings of the state habeas court.

On July 8, 1987, Paster's second execution date was scheduled for August 14, 1987. On July 30, 1987, Paster filed a petition for writ of habeas corpus in the United States District Court of the Southern District of Texas. Since two of his claims had not been exhausted, the federal court deferred action, and he filed a second state habeas petition and motion for stay of execution in state court. On August 4, 1987, the state habeas court denied relief. On August 10, 1987, the Texas Court of Criminal Appeals denied relief. On the state's motion, the federal district court deferred consideration of the request for stay pending action in the state habeas court. On August 11, 1987, a stay of execution was granted by the state habeas court.

On October 5, 1988, the federal district court entered an order adopting the federal magistrate's memorandum which denied habeas relief on all seventeen grounds for relief and vacated the stay of execution. The district court also denied a certificate of probable cause to appeal. As of the date of this decision, the state has not rescheduled Paster's execution.

Paster essentially raises three issues in this appeal relating to seven grounds for relief in his federal habeas petition:[3] (1) whether Paster's *Booth v. Maryland*[4] claim is procedurally barred; (2) whether an evidentiary hearing was required in federal court to determine whether Paster was harmed by the state trial court's failure to grant a continuance at trial to secure the testimony of prospective witnesses; (3) whether Paster's trial was rendered fundamentally unfair because he was deprived of sleep, medical care, adequate food, clothing and grooming facilities. We resolve each issue in turn.

## II. BOOTH v. MARYLAND CLAIM

At the sentencing phase of Paster's trial, the state introduced evidence of the emotional impact on the families of the victims and about the victims' physical condition when they were found by police. Paster challenges the testimony of Cynthia Johnson's uncle, the testimony of Diane Oliver's sister and a portion of the prosecutor's closing arguments as violative of the instruction in *Booth v. Maryland.* However, Paster never objected to this testimony or to the prosecutor's closing argument at trial.

In response to Paster's second state petition, the state habeas court found that the claim was waived under state law:

In Ground of Error Number Five the applicant has, for the first time, raised an issue concerning the propriety of alleged emotional appeals by the trial prosecutor for the jury to consider the emotional impact of the crime upon the victim's family. This contention has not been preserved by timely objection and the error, if any, had been waived.

*Ex parte Paster,* No. 377293–B (Dist.Ct. Harris County, 228th Judicial Dist. of Texas, Aug. 4, 1987) (Finding of Fact and Conclusion of Law 2). The Texas Court of Criminal Appeals affirmed the opinion of the state habeas court, satisfying the requirements of *Harris v. Reed,* — U.S. ——, 109 S.Ct. 1038, 1039–40, 103 L.Ed.2d 308 (1989). *Ex parte Paster,* No. 15,995–02 (Tex.Crim.App. Aug. 10, 1987).

Thus, under *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed. 2d 594 (1977), we are procedurally barred from considering this issue on federal habeas review unless Paster can show "good cause" for his noncompliance with state procedures and actual "prejudice" resulting from the alleged constitutional violation. *See also Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397

---

**3.** Although Paster raises four points of error we combine two in our discussion because they both relate to the weight the district court gave to the findings of the state trial and habeas courts on a particular group of facts.

**4.** *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

(1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982). Without reaching the issue of prejudice, we find that Paster has failed to make the required showing of "good cause" for his noncompliance with state procedures. In *Thompson v. Lynaugh*, 821 F.2d 1080, 1082 (5th Cir.), *cert. denied*, 483 U.S. 1035, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987), we held that the Supreme Court's decision in *Booth* did not create a sufficiently novel issue to excuse noncompliance with state procedures.[5] We are thus bound by our earlier precedent and affirm the district court's refusal to consider the merits of the claim based on the procedural default doctrine.

## III. MOTION FOR A CONTINUANCE TO SECURE WITNESSES

At Paster's *Jackson v. Denno* hearing on August 22, 1983, he asserted for the first time that he was under the influence of drugs when his confession was taped. A week later, inmates Roberto Lopez and James George were subpoenaed from the Holman State Penitentiary in Atmore, Alabama, because Paster asserted that they would corroborate his story. On September 19, 1983, one of Paster's attorneys moved for a continuance to secure the presence of the Alabama witnesses. On the same day, Paster filed a similar motion *pro se*.

Later that day, after Paster had conferred with his attorneys, Paster withdrew his motion for a continuance:

> MR. GUERINOT: At this time, Judge, we would state for the record that the Defendant at a prior date, specifically August 29, 1983, subpoenaed Mr. Lopez and Mr. George from the Holman Unit of the state penitentiary in Alabama at Atmore. After having discussed this thoroughly with Mr. Paster, we have decided we would waive their appearance in this trial. They are no longer needed as witnesses in this case.
>
> THE COURT: Do you so agree, Mr. Paster?

> MR. PASTER: Yes, Your Honor, I do.

The next day, they reiterated the withdrawal of their motion for continuance to secure the Alabama witnesses:

> MR. HANSEN: Judge, I believe this was resolved yesterday, but just so that the record is perfectly clear, there was a sworn Motion for Continuance filed by the Defendant yesterday requesting a continuance in order to secure his witnesses from Alabama. I know that he waived yesterday the appearance of those witnesses, but I would like the record to indicate that the Defendant has withdrawn his sworn Motion for Continuance at this time. Would the Court rule on that?
>
> MR. GUERINOT: We have withdrawn it, Judge.
>
> THE COURT: Is that true, Mr. Paster?
>
> MR. PASTER: Yes, sir, it is, Your Honor.

Paster now asserts that his rights to compulsory process and the effective assistance of counsel were violated when the trial court refused to grant the continuance. Paster also seeks an evidentiary hearing in the federal district court to develop the facts of these claims more fully.

### A. Trial Court's Ruling on the Motion for Continuance.

■ The record makes clear that there never was a motion for a continuance to secure the Alabama witnesses before the state trial court long enough for the trial judge to grant it. It is the defendant's responsibility, with the aid of the court, to subpoena witnesses to appear in his defense. There can be no error in the trial court's allowing Paster to withdraw his own motion made earlier in the day. The federal district court ruled that Paster's claim is frivolous. We agree. In *Skillern v. Estelle*, we stated that "'[w]hen a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and funda-

---

5. Texas law has recognized a prohibition against the use of victim impact evidence at a capital murder trial from as early as 1901. *Vela v. State*, 516 S.W.2d 176, 179 (Tex.Crim.App. 1975) (citing a line of cases from 1901–1971 holding that such evidence was inadmissible).

mentally unfair that it violates constitutional principles of due process.' " 720 F.2d 839, 850–51 (5th Cir.1983), *cert. denied*, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984), quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir.1981). We see no abuse of discretion in the state trial court's actions whatsoever.

## B.   Effective Assistance of Counsel.

█ We review the effective assistance of counsel claim based on the familiar two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> First ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the results unreliable.

In our review, we are mindful that "judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689 and 104 S.Ct. at 2065, and that we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689 and 104 S.Ct. at 2066.

Both of Paster's trial counsel testified and submitted affidavits for his state habeas evidentiary hearing. Counsel had extensively discussed with Paster the circumstances of his confession before the suppression hearing. However, they first learned from Paster on the day of the *Jackson v. Denno* hearing his contention that his confession was obtained under the influence of illegal drugs. They discussed with him whether to subpoena the prisoners from Alabama. They decided that any such testimony would be merely cumula-

tive of Paster's own evidence. Later, before trial they made a strategic decision to forego the testimony of the Alabama witnesses to prevent the jury from finding out at the guilt-innocence phase of trial that Paster was jailed there. Paster testified that he never wanted them to appear at his trial but only at the then-already-concluded *Jackson v. Denno* hearing. Yet Paster's only explanation to his attorneys as to why he wanted to subpoena them was, "well, have you ever been in an Alabama penitentiary."

Title 28 U.S.C. § 2254(d) (1982) requires federal courts to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported in the record. *See Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). In response to Paster's first state petition, the state habeas court made twenty-six findings relevant to the continuance issue, including a finding that Paster's attorneys decided not to call the witnesses at trial to prevent the jury from learning of Paster's incarceration in Alabama. *Ex parte Paster*, No. 377293–A (Dist.Ct. Harris County, 228th Judicial Dist. of Texas, Oct. 24, 1986) (Findings of Fact 1–26; Finding of Fact 24). The state habeas court also found that the decision to withdraw the motion for continuance was made after consultation with Paster and was "a matter of trial strategy." *Id.* (Findings of Fact 21, 23). Based on the "detailed written findings of fact" of the state habeas court, the federal district court concluded that "no ineffective assistance of counsel has been demonstrated under *Strickland v. Washington*."

The records of the trial and the state evidentiary hearing support the findings of the state habeas court. Paster actively assisted his counsel at trial and conducted legal research in his own defense. He agreed with his counsel's trial strategy at the time he withdrew his motion for a continuance to secure the Alabama witnesses. Only now does he suggest that his attorneys should have interrupted the trial and interviewed the Alabama witnesses or requested an additional *Jackson v. Denno*

hearing before they withdrew the motion for a continuance. This is precisely the type of second-guessing we cautioned against in *King v. Lynaugh,* 868 F.2d 1400, 1405 (5th Cir.1989). We again quote the Supreme Court's instruction in *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, that:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

This is not a case in which counsel failed to pursue leads that might have opened up new territory for the defense. Paster apparently discussed the potential testimony of the Alabama inmates fully with counsel, and that testimony was adjudged cumulative of Paster's statements that he used drugs before confessing to the Houston investigators. This was the essence of strategic decisionmaking. We conclude that at the very least, counsel for Paster conducted their defense "within the wide range of reasonable professional assistance." *Strickland,* 486 U.S. at 689, 104 S.Ct. at 2066.

**C. Motion to Remand for Federal Evidentiary Hearing.**

■ Paster bears the burden of establishing the need for a federal evidentiary hearing, but such a hearing is only necessary if the material facts are in dispute and if the state record is inadequate to resolve them. *Byrne v. Butler,* 845 F.2d 501, 512 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988).

Paster contends that the district court should have heard testimony from Lopez and George. Their affidavits were in evidence before the state habeas court, however.[6] Paster has not explained why their bodily absence at that hearing would call into question the reliability of the state habeas court's lengthy factual findings relating to his compulsory process and effective assistance of counsel claims. *See Streetman v. Lynaugh* (5th Cir.1987) 812 F.2d 950, 958. Moreover, at oral argument in our Court, Paster's counsel stated that the only state habeas court finding with which he disagreed was that the Alabama prisoners' testimony would have been "merely cumulative." Under the circumstances, that is too thin a reed on which to base the unreliability of the state habeas hearings. The issue of counsel's effectiveness at trial was thus fully aired in the state evidentiary hearing and should not, as a matter of comity, be subjected to Monday-morning quarterbacking by the federal courts. The district court properly denied Paster's motion for a federal evidentiary hearing. The record is complete and the evidence in the record is sufficient to provide full review of Paster's constitutional claims. *See Baldwin v. Maggio,* 704 F.2d 1325, 1328–29 (5th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984).

**IV. PHYSICAL APPEARANCE AT TRIAL, ACCESS TO LEGAL MATERIALS, AND MEDICAL CARE**

■ Paster argues that the federal district court failed to accord the proper weight to the state court findings concerning alleged violations of due process and effective assistance of counsel. There is no contention that the federal district court failed to consider a certain state court finding or that the district court erroneously refused to grant it a presumption of correctness. Instead, Paster points to a few preliminary findings, ignoring all of the other findings of the state trial and habeas courts, and argues that these few findings

---

**6.** Inmate George maintained that Paster "was always under the influence of some kind of drug," the most common being those prescribed to him. Inmate Lopez maintained that Paster "was so doped up on pills he couldn't even talk" the day of his confession. The only drugs Lopez identified are "the type of medication he was on." Neither inmate testified that Paster took an illegal drug the day of his confession and Lopez' claim that Paster "couldn't even talk" that day is inherently incredible.

compel the relief requested. As will be shown, Paster's argument is ill-founded.

### A. Physical Appearance at Trial and Deprivation of Sleep.

The state habeas court made eighteen findings relevant to Paster's physical appearance at trial and his complaint that jail personnel deprived him of sleep. *Ex parte Paster*, No. 377293–A (Findings of Fact 27–32, 44–53). Paster notes that the state habeas court found that he "disliked the bologna and pimento sandwiches he was served while incarcerated" during trial. *Id.* (Finding of Fact 50). Paster fails to acknowledge the following additional findings of the state habeas court:

(1) "He was not served hot meals due to the logistical problem of always being in court during the time the meals were served." (Finding of Fact 51);

(2) "A motion for hot meals was filed by defense counsel, and was eventually complied with." (Finding of Fact 52); and

(3) "The State did not deprive the Applicant of proper nutrition during the trial." (Finding of Fact 53).

Paster also contends that his constitutional right to a presumption of innocence was compromised by the denial of an opportunity to present an acceptable physical appearance. Paster points out that the trial court ordered that he be given a change of clothes and an opportunity to bathe and shave and that the state habeas court found that he "appeared one day before the jury looking unkempt." *Id.* (Finding of Fact 46). Yet, there were never any findings that the trial court's order was not complied with. On the contrary, the state habeas court found that:

(1) "The Applicant was not tried in jail clothes or in shackles. He wore street clothes during the trial." (Finding of Fact 44);

(2) "The Applicant was given the opportunity to bathe and shave ..." (Finding of Fact 45);

(3) "The record reflects that the Applicant himself expressed satisfaction to the court with the new set of clothes he was given to wear." (Finding of Fact 47); and

(4) "The state did not deprive the Applicant of an acceptable physical appearance." (Finding of Fact 48).

Finally, Paster points out that the state habeas court found that he was initially housed in a jail "quite a distance" from the courthouse, and that as a result he had to be "awakened early in the morning." Paster notes that the state habeas court found that during voir dire he once fell asleep. *Id.* (Findings of Fact 27–30). Paster fails to mention that upon request of defense counsel, he was moved to a downtown jail. *Id.* (Finding of Fact 31). In addition, the state habeas court found that:

(1) "After [he was moved] Applicant had no further problem in staying awake during the trial." (Finding of Fact 32);

(2) "The court, after hearing the Applicant testify at the evidentiary hearing and observing his demeanor, finds that his statement that he slept all the time before the jury during the trial is neither credible nor supported by the record." (Finding of Fact 33); and

(3) "The State did not deprive the Applicant of sleep during the trial." (Finding of Fact 34).

The federal district court concluded that the state habeas court's findings concerning these claims were supported in the record "and are dispositive of Petitioner's claims." We agree and deny the relief requested.

### B. Access to Legal Materials.

Paster claims that he was denied effective assistance of counsel because he was denied access to legal material necessary to aid in his defense. Paster does not mention that as soon as he filed a motion for access to legal material it was granted by the trial court. *Id.* (Findings of Fact 54–55). He was granted access to a law library and his counsel were allowed to deliver additional legal material. *Id.* (Findings of Fact 58–66) (noting when Paster actually visited the law library). Finally, the state habeas court found that: "The

State did not intentionally deprive the Applicant of access to legal materials during his trial." *Id.* (Findings of Fact 67). We conclude, as the district court did, that these findings dispose of Paster's constitutional claim.

## C. Denial of Medical Care.

Paster also contends that he was denied the effective assistance of counsel because he was deprived of medical attention and suffered pain that prevented him from consulting with his attorneys. The record reflects that Paster complained of pain in his shoulder, but was not immediately taken to a doctor "because he was in court all day long." *Id.* (Findings of Fact 35–36). After he requested medical attention for his injury, however, "[t]he trial court ordered that the Applicant receive medical treatment." *Id.* (Findings of Fact 37–38). The state habeas court found further that:

> (1) Paster "was taken to Ben Taub Hospital, examined by a doctor and advised there was nothing wrong with his shoulder." (Finding of Fact 40);
>
> (2) Paster "was never in such pain that he could not either proceed with the trial or confer with his attorneys." (Finding of Fact 41); and
>
> (3) "By [Paster's] own admission, his injury was not severe enough to affect his ability to assist his attorneys." (Finding of Fact 42).

The trial record reflects that the judge called the doctor and in open court confirmed the doctor's opinion that Paster's injury would not prevent "an intelligent conversation with his counsel in preparing the defense to his case ..." Paster v. Lynaugh, mem. op. at 12 (quoting a passage from the trial transcript). Thus, we are bound by the findings of the state habeas court and accordingly deny the relief that is requested.

## CONCLUSION

■ We may grant a certificate of probable cause under Fed.R.App.Proc. 22(b) only by finding that there has been a substantial showing of the denial of a federal right. *Barefoot v. Estelle*, 463 U.S. 880,

103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Similarly, a stay of execution may only be granted if a movant has made a showing (1) of a likelihood of success on the merits, (2) of irreparable injury in the absence of a stay, (3) that the granting of the stay would not substantially harm other parties, and (4) that granting the stay would serve the public interest. *Selvage v. Lynaugh*, 842 F.2d 89, 91 (5th Cir.1988). The foregoing discussion demonstrates that Paster is not entitled to relief on the merits of his claims. We can find no basis for granting a certificate of probable cause nor for issuing a stay of his execution.

Motion for certificate of probable cause DENIED; stay of execution DENIED.